MARY ISAAC, as Administratrix of the Estate of NELSON
ISAAC, Deceased, Appellant, *v.* TOWN OF QUEENSBURY,
Respondent.

LEONARD H. GUNNING, Appellant, *v.* SAME, Respondent.

FRANCIS H. DEROSIA, Appellant, *v.* SAME, Respondent.

DESMOND B. LAPOINT, Appellant, *v.* SAME, Respondent.

Argued November 30, 1937; decided January 18, 1938.

*Walter A. Chambers* and *Willard A. White* for appellants. The Appellate Division having dismissed the complaints, the Court of Appeals will take the view of the evidence most favorable to the plaintiffs. (*Faber* v. *City of New York,* 213 N. Y. 411; *Melcher* v. *Ocean Accident & Guarantee Corp.,* 226 N. Y. 51; *Hoykendorf* v. *Bradley Contracting Co.,* 227 N. Y. 204; *Ehrenworth* v. *Stuhmer & Co.,* 229 N. Y. 210.) The facts found by the jury establish that prior to the accident the section of the State highway had been discontinued as such and had been turned over to and had reverted to the jurisdiction of the town. (*Folliard* v. *Wallace,* 2 Johns. 395; *Humphreys* v. *Gardner,* 11 Johns. 61; *Hereford* v. *People,* 197 Ill. 222; *People ex rel. Loughran* v. *Railroad Comrs.,* 158 N. Y. 421; *Delaplaine* v. *Hitchcock,* 6 Hill, 14; *Fidelity & Deposit Co.* v. *Queens Co. Trust Co.,* 226 N. Y. 225; *People ex rel. Doscher* v. *Sisson,* 222 N. Y. 387; *Matter of Thompson,* 204 App. Div. 182; *Hagadorn* v. *Raux,* 72 N. Y. 583; *People ex rel. Root* v. *Bd. of Supervisors,* 146 N. Y. 107; *People* v. *Kerr,* 27 N. Y. 188.) Findings of the jury having established that jurisdiction over the highway was vested in the town, it is liable for any defects therein to the plaintiffs. (*Corcoran* v. *City of New York,* 188 N. Y. 131; *Snowden* v. *Town of Somerset,* 171 N. Y. 99; *Whitney* v. *Town of Ticonderoga,* 127 N. Y. 40; *Lendrum* v. *Village of Cobleskill,* 192 App. Div. 828; *Nicholson* v. *Town of Stillwater,* 208 N. Y. 203; *Johnson* v. *State,* 186 App. Div. 389; 227 N. Y. 610; *Wolf* v. *State,* 122 Misc. Rep. 381; 210 App. Div. 827; *Sporborg* v. *State,* 226 App. Div. 113; *Rigby* v. *Town of Gerry,* 209 App. Div. 391; *Augustine* v. *Town of Brant,* 249 N. Y. 198; *Gaynor* v. *Town of Hempstead,* 153 Misc. Rep. 321.) The defendant had knowledge of the dangerous character of the place where the accident occurred. (*Allen* v.

*Town of Allen,* 33 App. Div. 463; *Spencer* v. *Town of Sardinia,* 42 App. Div. 472; *Weed* v. *Village of Ballston Spa,* 76 N. Y. 329; *Kunz* v. *City of Troy,* 104 N. Y. 344; *Gillrie* v. *City of Lockport,* 122 N. Y. 403; *Pomfrey* v. *Village of Saratoga Springs,* 104 N. Y. 459; *Lundbeck* v. *City of Brooklyn,* 26 App. Div. 595; *Dye* v. *D., L. & W. R. R. Co.,* 130 N. Y. 671.)

*J. Edward Singleton* and *Beecher S. Clother* for respondent. A town is not liable for defects in a State highway; nor is it liable for the negligence of State officials. (*Isaac* v. *Town of Queensbury,* 244 App. Div. 14; *Graham* v. *Town of Urbana,* 235 App. Div. 275; 261 N. Y. 592; *Hinds* v. *State,* 144 Misc. Rep. 464; 240 App. Div. 742; 264 N. Y. 525; *Miller* v. *State,* 231 App. Div. 363; *Floss* v. *State,* 240 App. Div. 944; *Ferguson* v. *Town of Lewisboro,* 213 N. Y. 141.) Section 181-a (now section 63) of the Highway Law (Cons. Laws, ch. 25) is permissive and not mandatory. ( *United States* [*Matthews*] v. *Massachusetts Bonding & Ins. Co.,* 207 App. Div. 619.) The town was entitled to notice of entry of the order discontinuing the old highway. (*Palmer* v. *Aldridge,* 16 Barb. 131; *Josh* v. *Marshall,* 33 App. Div. 77; *Bank* v. *Hotel Co.,* 147 N. C. 594; *Matter of Salmon,* 34 Misc. Rep. 251; *Pittsburg, C. & Y. R. Co.* v. *Moses,* 2 Atl. Rep. 188; *Matter of New York Central & H. R. R. R. Co.,* 60 N. Y. 112.) The town superintendent of highways was not negligent. (*Lynch* v. *Town of Rhinebeck,* 210 N. Y. 101.)

RIPPEY, J. The causes of action alleged in the several complaints herein arose out of the same transaction and are grounded in negligence and nuisance. They were tried together and resulted in verdicts in favor of the several plaintiffs upon which separate judgments were entered. Upon appeal, the several judgments and orders denying motions for a new trial were reversed upon the law and the facts and the complaints dismissed. We must presume that the jury found every fact in favor of

plaintiffs necessary to sustain their verdicts if there was any supporting evidence. In examining the record to see if proof of the facts established a cause of action, appellants must be given " the benefit of every favorable inference which can reasonably be drawn." (*Faber* v. *City of New York*, 213 N. Y. 411, 414.)

The accident out of which the causes of action arose occurred at about 11:15 P. M., January 31, 1932, while Nelson Isaac, Gunning, DeRosia and LaPoint were proceeding in an automobile along a highway in the town of Queensbury. The automobile collided with a fence erected and maintained across the highway near the westerly boundary line of the Delaware and Hudson Railroad property between that line and the railroad tracks. Isaac died as the result of the accident and the other plaintiffs received more or less serious injuries. The jury were authorized to find upon the facts adduced at the trial that all of the occupants of the automobile were free from negligence contributing to the accident or to their injuries. There was evidence to sustain the finding that the fence constituted a defect in the old highway, if it was still left open for traffic, which amounted to a nuisance. The only question presented requiring further attention is whether there was any evidence upon which the town of Queensbury may be held liable for negligence, as a result of which the accidents in the case at bar arose. Defendant seeks to maintain that the facts show as matter of law that the State of New York had control over the maintenance of the highway at the time of and immediately preceding the accident.

That part of the highway on which the accident occurred was a part of the State system of highways, a part of route 32B (County Highway 656), connecting with routes 9 and 22 (United States Routes 4 and 9, respectively), extending generally in an easterly and westerly direction between Glens Falls and Hudson Falls. The highway crossed the tracks of the Delaware

and Hudson Railroad Company at grade and at an angle of approximately forty-five degrees about 150 feet easterly of the city line of Glens Falls. The Superintendent of Public Works, pursuant to the authority vested in him by section 145 of the Highway Law (Highway Law of 1909, ch. 30, § 145, as amd. by L. 1927, ch. 447, § 1 [§ 10, subd. 21, of the present Highway Law]; Cons. Laws, ch. 25), instituted proceedings and proposed the elimination of the grade crossing in question. He was authorized by the provision of subdivision 2, section 2 of chapter 445 of the Laws of 1927 to file with the Public Service Commission on or before October 1st programs for consideration of grade crossing eliminations. By subdivision 3 of the same section the Public Service Commission was required within fifteen days after the filing of any such program for elimination, to give " notice to the superintendent of public works, the municipal corporations in which such crossings are located, and the railroad corporations operating the railroads crossed " and to thereafter proceed to hold hearings upon any such program which the statute required to be completed not later than December first with designation of the crossings to be eliminated during the ensuing calendar year. On October 25, 1927, the Public Service Commission gave due notice to the Superintendent of Public Works, and to the town of Queensbury by service thereof upon the Supervisor of said town, of a public hearing to consider the elimination of the crossing in question. The hearing was had on November 29, 1927, and continued on subsequent dates thereafter until December 13, 1928. The town of Queensbury and others were parties to all the proceedings. The town was represented by counsel. The proposal of the Superintendent of Public Works indicated the elimination of this grade crossing by the construction of a new highway to the northward of the crossing and an underpass. On December 13, 1928, the Public Service Commission made its order which provided, among other things, as follows:

" 2. That said existing crossing at grade shall be eliminated by closing the present street between the property lines of the railroad company and by diverting traffic by the construction of a new street and a new undercrossing of the railroad to be located about 430 feet northwesterly of the present crossing, substantially in accordance with the plan submitted at the hearing on June 19, 1928  *  *  *.

" 3. That the existing crossing shall be maintained until the new street undercrossing is completed and opened to traffic after which the existing street shall be closed and discontinued across the railroad."

Service of the aforesaid order of December 13th was made upon the Supervisor of the town on January 3, 1929.  Thereupon the contract for the work was let and construction of the new strip of highway and underpass was commenced and completed.  On August 25, 1931, the Public Service Commission made an order approving the completed work.  A certified copy of the order was served upon the Supervisor of the town of Queensbury with a statement that " this is sent to you so you may have notice of the progress of the work," and inclosed with the notice was a form of notification to the Commission under section 23 of the Public Service Law (Cons. Laws, ch. 48) of receipt of the certified copy of the order with a request that the notification paper be signed and mailed forthwith to the Commission.  Thereupon the Supervisor signed the notification form in which he admitted service of the certified copy of the order of the Public Service Commission aforesaid and *specifically approved the completed work.*

In the latter part of June previous to the making of the order of August 25, 1931, the new highway and underpass were completed and opened for traffic.  When that occurred, the construction foreman of the Delaware and Hudson Railroad Company erected the fence in question upon the land of the railroad company, and thereafter

down to the time of the accident kept the fence in repair. The town of Queensbury furnished no men or material for the construction or repair of the fence. At the time of the erection of the fence, the Department of Public Works unquestionably had control over the old highway. It ceased either to maintain or repair the highway from and after July 14, 1931.

On September 18, 1931, the Department of Public Works made its official order discontinuing the limited section of County Highway 656 as reconstructed under Public Service Case No. 4696 as a section of County Highway 656 and provided that no further maintenance by the State should be performed thereon and ordered " that said section of said highway be and it is hereby turned over to the Town of Queensbury, Warren County, for future maintenance and repair." This order was not officially served upon the Supervisor of the town of Queensbury until March 18, 1932. Defendant asserts that before the portion of the old highway upon which the accident happened could revert to the jurisdiction of the town (1) a determination by the Department of Public Works that that portion no longer served a useful purpose as a part of the State highway system must have been made under section 63 of the Highway Law (formerly section 181-a), and (2) notice of such determination must have been served upon the town. Appellants attempt to meet that assertion by an argument that section 62 (formerly section 181) of the Highway Law is applicable to the case at bar and that no making or service of any order was necessary.

Prior to 1908 the highway in question was a town highway. It was then improved and became a county highway, and the State took over its maintenance in 1909 and continued to maintain and repair it until July 14, 1931.

There is no statutory duty imposed upon the town to maintain State or county highways in a safe condition for travel or to remove obstructions therefrom except

that imposed by section 53 (now section 140, subd. 9) of the Highway Law, which requires the town superintendent to remove obstructions caused by snow and to keep culverts and waterways free from snow and ice. The accident here was not due to snow or ice or to clogged culverts. Liability for maintenance of obstructions on a State highway can arise only in violation of a duty imposed by statute. (*Graham* v. *Town of Urbana*, 261 N. Y. 592.) Liability is imposed, however, on each town " for all damages to persons or property sustained by reason of any defect in its highways or bridges, existing because of the neglect of any town superintendent of such town " (Highway Law, § 74, now § 215). By the provisions of section 3 of the Highway Law all highways in towns outside of incorporated villages constituting separate road districts which are neither State nor county highways are town highways.

A highway can revert to the town under either section 62 or section 63 (formerly sections 181 and 181-a, respectively) of the Highway Law and, for the purposes of this case, only under the provisions of one of those sections. The provisions of section 62 have no application to a case such as this where a proceeding is instituted before the Public Service Commission for the elimination of a grade crossing. Determination of the necessity of a change of location of a limited section of a highway for the improvement of its alignment or of dangerous conditions authorized by the provisions of that section must be made by the Department of Public Works, whereas the determination of the necessity for the elimination of a grade crossing must be made by the Public Service Commission. Section 63 provides specifically for a case where a grade crossing is eliminated through proceedings before the Public Service Commission. Where proceedings are taken for a change of location of a limited portion of a highway under section 62, the cost of the relocation of the highway, exclusive of the cost of providing the new right of way which must be borne by the

county, shall be paid from the funds which are provided for the repair and reconstruction of State highways, whereas in a case such as this where the elimination of a grade crossing is undertaken under the provisions of the Grade Crossing Elimination Act (Laws of 1928, ch. 678; Unconsolidated Laws [McKinney], Book 65, §§ 2011–2024) the cost, in so far as it is important here to indicate, shall be borne forty-nine per cent by the State, one per cent by the county in which the crossing is located, and fifty per cent by the railroad corporation affected thereby (§ 2013). It is quite clear that the two sections have relation to entirely different proceedings for different purposes. It must be presumed that the Legislature intended that sections 62 and 63 should have different applications; otherwise there would have been no occasion for the enactment of the separate sections.

Under section 62, prior to its amendment by chapter 739 of the Laws of 1937, it was provided that " the department of public works shall cease to maintain the section of highway discontinued, * * * upon the completion of the substituted section, and it shall revert to the jurisdiction of the town." Under section 63, the portion of the highway eliminated reverted to the town upon completion of the elimination work only where a determination had been made to the effect that it no longer served a useful purpose as a part of the State highway system. Notice of such determination was required to be given to the town. Although the section contained no provision for notice, inasmuch as the determination affected the rights of persons and property, reasonable notice was required. The provisions of section 63 were alone applicable under which a reversion of the eliminated portion of the old highway could be made to the jurisdiction of the town.

There is nothing contained in section 63 that required the determination to be made by the Department of Public Works. Having in mind the general scheme of

highway administration, it might have appropriately been provided that such a determination should be made by the Department of Public Works.

The Department of Public Works attempted to make a determination such as required under section 63 of the Highway Law, as we have indicated, by its order of September 18, 1931. That order can be deemed a compliance with that section only in the event that we may ignore the " *whereas* " clause, which by its wording brings the order squarely under the provisions of section 62. Although referring to section 181-a (§ 63), the determination, if any, was made under section 181 (§ 62). The order was, therefore, ineffectual to consummate a reversion of the eliminated portion of the old highway to the town, for it contained no finding by the Department of Public Works that the eliminated portion of the State highway " no longer serves a useful purpose as a part of such system." Perhaps an order which merely transfers the highway to the town may be deemed a sufficient compliance with the law to effectuate the reversion of the eliminated portion to the jurisdiction of the town without any formal statement therein of a finding or determination that it no longer serves any useful purpose in the State highway system. Upon that point we do not pass. Such an order is not before us. In the order here we cannot ignore the statement contained in the " whereas " clause for it contains a specific statement of the determination upon which the order is based. Even though we could ignore it, the order was not served before the happening of the accident.

With the order of the Department of Public Works ineffectual, the question arises as to whether or not such a determination had been made that the eliminated portion of the State highway, after completion of the work, would no longer serve a useful purpose in connection with the general highway system of the State as would effect a

reversion of the eliminated portion of the highway to the town. The Department of Public Works was the moving party before the Public Service Commission and was a party to the determination of the latter contained in its order of December 13, 1928. Attention has already been called to the fact that the town was a party to the proceedings before the Public Service Commission and represented throughout by counsel and that a copy of the order of December 13, 1928, was duly served upon the town. That order provided that after the elimination work had been completed and the underpass opened for traffic the existing street should be closed and discontinued across the railroad. Necessarily, when closed, it could no longer serve a useful purpose in the State highway system. We have also called attention to the fact that the Public Service Commission served upon the town its order of August 25, 1931, to the effect that the work had been completed and approved, that the Supervisor of the town had acknowledged the receipt of that notice on September 3, 1931, and of the order and that he *had also acknowledged that the work had been completed and that it had been approved.*

A sufficient determination was made in the proceeding before the Public Service Commission in which defendant was a party and sufficient notice was given to meet the requirements of the provisions of section 63. We are not permitted to insert in that section a clause that the determination must be made exclusively and under all circumstances by the Department of Public Works when the Legislature saw fit to be silent on that subject. If that conclusion is correct, it follows that no further or different determination, order or notice to the town was necessary and that from and after the third day of September, 1931, the portion of the highway located within the town which was eliminated ceased to be a county highway or a part of the State highway system and reverted to the jurisdiction of the town. The town superintendent

thereby and thereupon was charged with the duty of maintenance. The defect existed in the highway from July 14, 1931. Several accidents, similar to the one on which these actions are based, had occurred between July 14, 1931, and the date on which the automobile containing Isaac and the other plaintiffs ran into the obstruction. There was sufficient evidence to make it a question of fact whether the superintendent had actual notice of the defective and dangerous condition of the highway or whether it had existed for such a length of time as to charge him with notice thereof. (Cf. *Fidelity & Deposit Co.* v. *Queens County Trust Co.,* 226 N. Y. 225, 233.) Through him, if he knew or ought to have known of the dangerous situation and failed to remedy it or to give reasonably sufficient notice of the defective condition of the old highway, the town was chargeable with liability for negligence in the maintenance and lack of notice to travelers on the highway of the obstruction if such was the sole proximate cause of the accident.

In each action the judgment should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J., O'BRIEN and HUBBS, JJ., concur; LEHMAN, LOUGHRAN and FINCH, JJ., dissent.

Judgments reversed, etc.