EDWARD GERAGHTY, JR., an Infant, by EDWARD GERAGHTY, SR., His Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30713.)

Court of Claims, December 18, 1952.

*M. Maurice Chacchia* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

LAMBIASE, J. This claim was filed to recover damages for severe personal injuries, including a fractured skull and damage to brain tissue requiring the removal of some of said tissue, suffered by the infant claimant as the result of an accident which

occurred on May 12, 1949, at about 5:00 P.M. of that day while he was riding as a passenger in an automobile owned by one Julius C. Marquardt, and operated by the latter's son, Charles B. Marquardt. It was duly filed pursuant to an order of this court, and the claim alleged therein has not been assigned and has not been submitted to any other officer or tribunal for audit or determination.

Immediately prior to the accident the Marquardt automobile, operated as aforesaid, had been proceeding in a general northeasterly direction on New York State Highway No. 638, also known as Route 245. When the automobile had reached the point where, according to the contention of the State of New York, Route 245 curves to the left, the operator thereof, instead of continuing along said highway in the direction of and into said curve, drove it in a generally straight direction causing it to leave Route 245 and continue upon what, for the purposes of convenience, we designate herein as the " cut-off " which " cut-off " we shall more particularly describe and discuss at greater length hereinafter.

It is the contention of the infant claimant: that the accident with its resultant injuries to him was caused without his negligence when the operator of the automobile lost control thereof, after going upon said " cut-off ", because of its striking some holes, bumps, and depressions in the pavement thereof; that the State of New York at the time of the accident was and since January 11, 1910, had been responsible for the maintenance and repair thereof; that the State of New York had not legally divested itself of such responsibility on the date of the accident; that on the day of the accident the State of New York was and for some time prior thereto had been negligent in the discharge of said responsibility; that said negligence was the sole proximate cause of said accident and of its resultant injuries to him; and that by reason thereof the State of New York is liable for the damages sustained by him. He contends further that, assuming *arguendo* and for that purpose only that the State of New York had duly divested itself of such responsibility in December, 1926, as claimed by it, " it was, nevertheless, negligent in the maintenance of the new section when it so maintained the new section as to invite the traveling public thereon to enter the discontinued dangerous section." (Claimant's main brief, p. 23.)

The State of New York maintains that in December, 1926, it had duly and permanently divested itself, pursuant to law, of any legal control and responsibility for the repair and main-

tenance of the so-called "cut-off". It maintains further that the accident was caused solely and wholly by the negligence of the operator of the car in which claimant was riding.

It is not the subject of controversy that the pavement of the "cut-off" on the date of the accident was and for some time prior thereto had been in a bad state of repair, and we so find. We find further that its maintenance in such condition on that day and prior thereto constitutes negligence. The question, not without its difficulties, which we must resolve is, was the repair and maintenance of said "cut-off" on the date of the accident the responsibility of the State of New York?

In 1910, the so-called "cut-off" was concededly part of a county highway in Ontario County, New York, known as Geneva County Highway No. 638. Upon petition, presumably of the County of Ontario, New York, the State of New York made some improvements to said county highway (petition 1135, Exhibit A, Sm. 127–128). The plans for this improvement appear to have been "Approved at an Executive Session of the State Commission of Highways, pursuant to Section 127 of the Highway Law, held on January 10, 1910" and "Approved and adopted by Resolution of the Board of Supervisors of Ontario County, pursuant to Section 128 of the Highway Law at a meeting held on January 11th, 1910". (Exhibit A.) It is conceded that following this improvement and as of January 11, 1910, the maintenance and repair of said highway including said "cut-off", by provision of the Highway Law of the State of New York as it then read (§ 170), came under the direct supervision of the State of New York, and it became responsible for said maintenance and repair. This responsibility, it is conceded by the State of New York, continued until December, 1926, when, it is contended by it, upon the completion of the reconstruction work on said highway which it performed and which is shown on Exhibit B, it duly divested itself of said responsibility and control pursuant to section 181 of the Highway Law of the State of New York as it then read.

The work performed by the State of New York in 1925–1926, consisted of the elimination of the so-called "cut-off" and the substitution therefor of the curve hereinbefore mentioned. The result of said reconstruction was that whereas before it was completed, one traveling northeasterly on said highway upon arriving at said "cut-off" would proceed straight over the same to what was then known as "Pre-emption Road" and then on to Routes 5 and 20, after the reconstruction one thus traveling would continue directly to Routes 5 and 20 by following the

new curve section on Route 245. This improvement involved and resulted in a change in location in a limited section of said Route 245 and was authorized pursuant to then section 181 of the Highway Law above mentioned which, at the time thereof, read as follows: " § 181. *Improvement of alignment and of dangerous conditions on repair work.* Whenever in the maintenance and repair of state and county highways under the provisions of this chapter, the commission shall have determined upon the necessity of a change in location for the improvement of alignment or of dangerous conditions on a limited section of such highway, and provided all necessary right of way shall have been acquired in accordance with section one hundred and forty-eight of article six, the commission may proceed with such improvement. The cost thereof, exclusive of the cost of providing right of way, shall be paid from the funds which are provided for the repair or reconstruction of state or county highways. The commission shall cease to maintain the section of highway discontinued * * * upon the completion of the substituted section. When the section of highway intended to be discontinued includes a gap left in the original improvement to provide for the elimination or alteration of a railroad crossing, such gap for the purposes of this chapter shall be deemed to be an improved highway the same as the balance of such section."

Upon the completion of the reconstruction work of 1925–1926, the New York State Division Engineer at Rochester, New York, wrote a letter to A. W. Brandt, the then Commissioner of Highways of the State of New York, stating that the new section — describing the new section in detail — was substituted for the so-called " cut-off ", — describing the " cut-off " in detail —, and stating further that " Under section 188 of the Highway Law, I wish to abandon the following section of the Geneva County Highway #638, Ontario County ". (Exhibit 22.) The letter is obviously in error in its reference to section 188 of the Highway Law for an examination of said law in effect in 1926, discloses no such section. Obviously, the appropriate reference should have been to section 181. (See Exhibit 23.) In reply to this letter the Commissioner wrote to the said State Division Engineer (Exhibit 23) as follows: " Attached please find copy of an Official Order of this Bureau, dated, December 14, 1926, discontinuing under the provisions of Section 181 of the Highway Law, a limited section in the reconstruction of the GENEVA, County Highway No. 638, in the Town of GENEVA, ONTARIO County, under RECONSTRUCTION CONTRACT NO. 1447, and constructing a substituted section therefor, said discontin-

ued limited section being turned over to the Town of Geneva, Ontario County, for future maintenance and repair.'' Exhibit 24 is a copy of the order referred to in Exhibit 23.

It is by virtue of its compliance with the provisions of section 181 aforesaid and of its order dated December 14, 1926 (Exhibit 24), a copy of which was concededly forwarded to the Ontario County Board of Supervisors and read at its meeting held December 30, 1926, and referred to its Highway Committee (S. M. 165–166, Exhibit D, pp. 143, 144), that the State of New York contends that it was divested in 1926 of its responsibility with reference to the maintenance and repair of said '' cut-off ''. Said order reads as follows:

STATE DEPARTMENT OF PUBLIC WORKS

BUREAU OF HIGHWAYS

Official Order December 14, 1926.

Discontinuance — Limited Section — Highway No. 638.

Whereas, in the reconstruction of the Geneva, County Highway No. 638, in the Town of *Geneva, Ontario* County, Reconstruction Contract No. 1447, which has heretofore been completed and accepted, a change in location of a limited section of said highway was determined upon by the Bureau of Highways, said section being described, as follows:

Beginning at Station 0+00 of highway 638 at its junction with highway 333, thence south 6° 0'', west 180.6', thence curving to the right with a 115' radius 95.3', thence south 67° 0'', west 759.6', thence curving to the left with a radius of 123° 39.6', thence south 45° and 22'', west 371.2' to station 14+46.3 of said highway;

and

Whereas, in place of said limited section as above described, there was constructed under Reconstruction Contract No. 1447, a substituted section therefor, described, as follows:

Beginning at Station 0—204.4' to Station 11+06 of the new survey base line, which equals Station 14+46.3' of the center line of the original highway No. 638;

and

Whereas, Section 181 of the Highway Law provides that where in the reconstruction or repair of a state or county highway, the location of a limited section thereof is changed for the improvement of alignment or the elimination of a dangerous condition, said limited section shall be discontinued, and the State shall cease to maintain said section upon the completion of the substituted section; It is

Ordered: That the limited section of highway No. 638 first above described, is hereby discontinued as a section of County Highway No. 638, and no further maintenance by the State shall be performed thereon; and it is further

Ordered: That said section of highway be and it is hereby turned over to the Town of *Geneva, Ontario* County, for future maintenance and repair.

F. S. GREENE

*Superintendent.*

It is claimant's position that although section 181 aforesaid as it read in 1926, made no provision for the giving of notice of the completion of the substitute section of highway and of the discontinuance of the old section, the State of New York was, nevertheless, " obligated to take *reasonable* steps and follow *reasonable* procedure to bring its order to the attention of the proper officer or officers of the municipality or subdivision of the State to whom it is surrendering that section of the highway and upon whom there shall be imposed the duty of maintaining the same "; and that " until such time as the State of New York shall have *effectively* imposed the responsibility of maintaining this section of the highway, it could not *effectively* relieve itself from such liability." (Claimant's main brief, pp. 12, 13.)

Claimant submits that such " reasonable steps " were not taken and that such " reasonable procedure " was not followed as to either the County of Ontario or the Town of Geneva by the State of New York, in 1926, or at any other time subsequent thereto and up to and including the date of the accident, and that, consequently, as of the date of the accident it had not legally divested itself of its responsibility theretofore existing with reference to said " cut-off ".

Claimant submits that as to the County of Ontario, New York, the notice given to it by the State of New York was ineffective and not proper notice because the order attached to the communication provided that the discontinued highway " be and it is hereby turned over to the Town of *Geneva, Ontario* County, for future maintenance and repair." (Exhibit 24.) He submits further that as to the Town of Geneva, New York, there was no notice duly served upon it, and that the provision in the order forwarded to the County of Ontario, New York, turning over to it for future maintenance and repair the discontinued section was ineffective as a step in the State's attempting to divest itself of said responsibility.

Since section 181 of the Highway Law of the State of New York as it read in 1926, made no provision for the maintenance and repair of the discontinued section of the highway after the State of New York by virtue of its provisions ceased to do so, — although present section 62 of the Highway Law, the successor section to section 181 aforesaid, does provide for the maintenance of discontinued sections of State highway following discontinuance of maintenance thereof by the State of New York as part of its highway system under the circumstances therein set forth and does make provision for the service of a copy of the official order of discontinuance of State maintenance upon the

officials specified therein; — and since the discontinued " cut-off " was part of a county highway in 1910, when its maintenance and repair became the responsibility of the State of New York, and since it was in 1926, and at the time of its improvement under section 181 a county highway maintained by the State of New York as part of its highway system, and assuming that reasonable notice of the completion of the substituted section and of the discontinuance of maintenance thereof by the State of New York as a part of its highway system following the reconstruction work of 1925–1926 was required (*Isaac* v. *Town of Queensbury,* 277 N. Y. 37), it would seem that such notice should be given to the County of Ontario, New York. In our opinion the provision in said order returning the discontinued limited section to the Town of Geneva for future maintenance and repair did not impair the effectiveness of said order as reasonable notice to the County of Ontario, New York. We are of the opinion, therefore, that the order forwarded to the County of Ontario, New York constituted such reasonable notice to the County of Ontario, New York, the provision contained therein referring to the Town of Geneva, New York notwithstanding.

We conclude that the State of New York did duly divest itself of its statutory responsibility in 1926, with reference to the repair and maintenance of the aforesaid " cut-off ". Implicit in that conclusion is the further conclusion that unless legally reimposed there was no duty upon the State of New York thereafter to continue to maintain and repair said discontinued " cut-off ". In fact, it was mandatory upon the State of New York to cease to maintain the discontinued section when the new section was completed. And, in our opinion, the record does not disclose with reference to said " cut-off " any conduct on the part of the State of New York, through its officers and employees, inconsistent with its claim that it had duly divested itself of such responsibility. Lastly, there has not been called to our attention nor have we found any legislative reimposition of said responsibility upon the State of New York.

We find the contention of the claimant untenable that, assuming *arguendo,* the State of New York had prior to the date of the accident divested itself of its responsibility for the repair and maintenance of said " cut-off ", it was negligent in its maintenance of Route 245 and particularly of said substitute section in that it did not provide adequate warnings and barriers warning the lawful users of said Route 245 as to the discontinuance of State maintenance of the " cut-off " as a part of its highway system. While it is true that the State of New York at no time

prior to the accident had erected any signs specifically stating that the maintenance of the " cut-off " as part of its highway system had been discontinued, and that it had not placed barriers at the junction of the substitute section and of the " cut-off ", the record establishes that on the day of the accident there were guide posts along the outside or easterly portion of the curve commencing at a point south of the junction of the substitute section of the discontinued " cut-off " and continuing to a point north of said junction; there were twelve such concrete posts south of the junction and twenty-seven to the north thereof, permitting an opening at the junction equal to the width of the traveled portion of the " cut-off " plus its adjacent shoulders; that the " cut-off " could be seen while one was proceeding in the direction in which the Marquardt car was proceeding prior to the accident, and that the driver of said car did see the " cut-off " when he was some distance to the south thereof; that the location of the curve was disclosed to motorists traveling north-easterly by a standard New York warning sign, located approximately 500 feet to the south of the aforesaid junction and having on it a reflectorized arrow indicating a curve to the left which sign the driver testified that he did not recollect seeing; that there was also a white guide line along the center of the concrete pavement of Route 245 which continued around the curve to the north and which line the driver observed; that the weather was clear and the road surface was dry; and that beginning at a point about 1,000 feet to the south of the junction the alignment of the pavement was straight and practically level. Lastly, but not the less important, the time of the occurrence of the accident was 5:00 o'clock in the afternoon. " Where there is no visible boundary to the line of the street and a portion of the road-way traveled on is so near the actual line (although really outside thereof), as to induce the belief in any one exercising reasonable care that he is within such line, if such portion is for any reason rendered dangerous for travel and the city has notice thereof in due time, and such danger can be remedied by the exercise of reasonable care, either by the erection of a guard or railing along the true limits of the street, or in some other way, and the city neglects to guard it, we see no reason why it should not be held liable to one who is injured outside of such limits, under such circumstances, he being himself free from any neglect contributing to the injury." (*Jewhurst* v. *City of Syracuse*, 108 N. Y. 303, 312.) We find no such situation as is set forth in the foregoing quote existing on the day of and at and near the point of the accident alleged in the claim and described in the record.

We find no negligence on the part of the claimant proximately causing or contributing as a proximate cause to the happening of the accident described herein with its resultant injuries to him. We find further that claimant has failed to make out the cause of action alleged in his claim or any other cause of action against the State of New York, and that his claim must be and hereby is dismissed upon the merits.

We have marked the separately numbered proposed findings of fact and conclusions of law which have been submitted to us by the claimant and by the State of New York.

The foregoing constitutes the written and signed decision of the court. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.