EDWARD GERAGHTY, JR., an Infant, by EDWARD GERAGHTY, SR., His Guardian ad Litem, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 30713.)

Argued April 15, 1955; decided July 8, 1955.

*M. Maurice Chacchia* for appellant. I. The Superintendent of Public Works had no authority to abandon this section of the highway. (*City of Mount Vernon* v. *New York, N. H. & H. R. R. Co.,* 232 N. Y. 309; *Hughes* v. *Bingham,* 135 N. Y. 347.) II. Service of copy of the order upon the Ontario County Board of Supervisors was ineffectual: (a) To impose responsibility upon the County of Ontario, and (b) to impose responsibility upon the Town of Geneva for future maintenance of this section of the highway. III. The conduct of the State of New York, its engineers and employees is inconsistent with its claim that this highway was abandoned.

*Jacob K. Javits, Attorney-General* (*John R. Davison* and *Henry S. Manley* of counsel), for respondent. I. The finding of the courts below that " the State of New York was free from any negligence which caused or contributed to the happening of this accident " is conclusive in this court. (*Canepa* v. *State of New York,* 306 N. Y. 272; *Drivas* v. *Lekas,* 292 N. Y. 204; *Harrington* v. *Harrington,* 290 N. Y. 126; *Sturman* v. *State of New York,* 244 App. Div. 865, 269 N. Y. 627; *Shaw* v. *State of New York,* 196 Misc. 792, 278 App. Div. 871, 303 N. Y. 644; *Griffin* v. *State of New York,* 250 App. Div. 244; *O'Brien* v. *State of New York,* 270 App. Div. 877; *Lyons* v. *State of New York,* 274 App. Div. 1086, 299 N. Y. 593.) II. The record does not disclose any conduct on the part of the State of New York, through its officers and employees,

inconsistent with its claim that it had duly divested itself of responsibility. III. The procedure required by section 181 of the Highway Law, as it read in 1926, was followed. (*Isaac* v. *Town of Queensbury*, 277 N. Y. 37.)

VAN VOORHIS, J. The injured claimant was a passenger in an automobile which went out of control on an abandoned section of State highway. The question concerns what is the duty of the State with respect to portions of State highways that have been discontinued. In this instance, as Route 245 formerly approached from the south the single main highway known as Routes 5 and 20, it ran northeastward into an historical thoroughfare known as the Preemption Road, at a location several hundred feet south of the junction of the latter with Routes 5 and 20. In 1926 this portion of Route 245 was relocated, by the construction of a curve to the left (north) off from the old course of the route at a distance of less than one mile before the latter joined the Preemption Road, and the relocated course then proceeded north directly into Routes 5 and 20 at a point several hundred yards west of the intersection of those routes with the Preemption Road. Preemption Road thus ceased to be a link in Route 245. This was one of those changes that have become necessary to lengthen curves and avoid abrupt intersections, so as to adapt old roads to rapid modern motor traffic.

Upon the day of this accident (May 12, 1949), three high school students from Montour Falls, sixteen and seventeen years in age, were riding in an automobile driven by one of them named Charles Marquardt. He was a licensed operator. The automobile belonged to Marquardt's father. One of the other occupants of the auto was plaintiff, Edward Geraghty, Jr. They had driven south on Route 245 along its new course for a distance of about three miles southerly from Routes 5 and 20 to a milk and ice cream bar which was their destination.

In returning they reached the point where the new and improved Route 245 diverged from the course of the old road. At this location, as has been stated, the new highway bears to the left whereas the old road continues straight ahead. The driver of this car evidently knew that he was leaving Route 245, and taking the old road. The new highway was of concrete, marked by a solid white line in the center turning to the left,

and by the usual " curve " sign five hundred feet in advance of the bend. The curve was also indicated by white posts guarding the circumference around the outside of the shoulder. These facts are not disputed. Upon the other hand, there was nothing to indicate that the old road had been closed or that vehicles were not permitted to enter it. There were no " Road Closed " signs or barriers, showing that maintenance of the abandoned section had been discontinued, and the gap between the white guard posts around the circumference of the newly constructed curve and the straight line of posts leading to the entrance of the old road bore witness to its being open. The driver of this auto evidently turned off from Route 245 so as to vary the scenery in going to and from the milk bar. He admitted that he knew that if he had continued on the concrete pavement he would have re-entered Routes 5 and 20 where he left them. It is of no consequence that he did not notice the white line bending to the left in the center of the concrete road, nor the curve sign before reaching the curve. He considered that he had the right to depart from the new course of Route 245 along the old road and return to Routes 5 and 20 via the Preemption Road. Knowing that Route 245 veered to the left, he chose to take the other road and in doing so assumed that it was passable. All of that is evident from the testimony and the circumstances of the accident. The basis for negligence is that there were no signs, barriers or warnings to indicate that the old road had been discontinued and that, by some mischance, it had not been maintained by the State, by the county or by the town. For twenty-two years it had simply been left, as the sequel proved, to the care of the elements alone.

The Court of Claims found that it was negligent to have permitted this discontinued section of highway to have deteriorated into the condition in which it was — " rough, broken and unkept " with " numerous holes and depressions ". Claimant was found to have been free from contributory negligence. These findings were not disturbed by the Appellate Division, and are supported by evidence. But the claim was dismissed upon the ground that responsibility for maintenance of this part of the road no longer rested upon the State. That is the question in the case,

The discontinued portion of this road was concededly an Ontario County highway prior to 1910 when it became a State road. From 1910 until 1926 the State maintained and repaired it. When the change occurred in 1926, the State took some steps to divest itself of its duty to maintain the discontinued portion. The applicable statute was section 181 (now § 62) of the Highway Law. It provided, as amended to that date, that " Whenever in the maintenance and repair of state and county highways under the provisions of this chapter, the commission [State Commission of Highways] shall have determined upon the necessity of a change in location for the improvement of alignment or of dangerous conditions on a limited section of such highway * * * the commission may proceed with such improvement. * * * The commission shall cease to maintain the section of highway discontinued upon the completion of the substituted section."

Those were the material portions of statute in force when the State attempted to abandon this stretch of road in 1926. Nothing was said about what became of the abandoned portion of such a road. Section 181 was later amended and renumbered (L. 1937, ch. 739; L. 1944, ch. 515), so as to provide specifically that if such an abandoned portion of highway had been located within a village before it went on State maintenance it should revert to the village, and in similar fashion to the town or county if it had been a town or county highway. These amendments further provided: " The transfer of maintenance of a section of highway and of any bridge and culvert thereon, to any county or counties, town or towns, or village or villages as herein provided, shall become effective upon the mailing of a certified copy of such official order [of discontinuance by the State Superintendent of Public Works] to the clerk or clerks of the board or boards of supervisors of the county or counties, to the town clerk or clerks or to the clerk or clerks of the village or villages, as the case may be."

These amendments are held to be declaratory of the substance of the earlier statute. The dispute in the instant case (which presents a question of law) arises due to the circumstance that, upon the discontinuance of this section of road by the State, the Superintendent of Public Works made an order of discontinuance pursuant to section 181 of the Highway Law which was sent

to the Ontario County Board of Supervisors, but the last paragraph of it stated: "ORDERED: That such section of highway be and it is hereby turned over *to the Town of Geneva, Ontario County, for future maintenance and repair.*" (Italics supplied.)

In *Isaac* v. *Town of Queensbury* (277 N. Y. 37, 48), section 63 of the Highway Law was before the court concerning grade crossing eliminations. In that instance, the elimination had resulted in the abandonment of a portion of State highway which crossed the railroad tracks at grade, and the substitution of an altered route beneath the tracks. A fence had been constructed across the old road at the former grade crossing, into which an automobile ran at night. This condition amounted to a nuisance, but the question was presented who was liable for the nuisance. The court said at page 48: " Under section 63, the portion of the highway eliminated reverted to the town upon completion of the elimination work only where a determination had been made to the effect that it no longer served a useful purpose as a part of the State highway system. Notice of such determination was required to be given to the town. *Although the section contained no provision for notice, inasmuch as the determination affected the rights of persons and property, reasonable notice was required.*" (Italics supplied.)

It is the contention of the State that under former section 181 of the Highway Law the mere cessation of maintenance was sufficient at the time when the substituted road was completed, that the State did not need to abandon the highway *to* any other governmental unit or authority. Claimant, upon the other hand, contends that it was necessary to have given notice to the County of Ontario that State maintenance had ceased and that county maintenance was to begin.

Inasmuch as this was a county highway before its accession to the State system in 1910, in point of law it reverted to Ontario County after being discontinued in 1926, notwithstanding the absence of any specific clause to that effect in the statute then in force. But, as was held in the *Town of Queensbury* case (*supra*), more than this was necessary in order to absolve the State from its duty to the traveling public. The State had to notify the governmental unit to which the duty of maintenance was being transferred before the State could be relieved of all responsibility. The notice which was given to the Board of Supervisors

of Ontario County by transmitting the order of the Superintendent of Public Works, would have been adequate except for its last paragraph, which stated that this portion of the road was to be maintained by the Town of Geneva. In view of that express admonition, it would not be expected that the Ontario County Highway Department would assume maintenance contrary to the direction of the State Superintendent.

The town clerk's records were produced, which showed that the Town of Geneva had received no notice from the State concerning the abandonment of this section. The behavior of the State at no time put the town on notice of the transfer to it of a road which had never before been under its control or supervision as a town highway.

Respondent argues that everyone is presumed to know the law, and that the County of Ontario, at whose Board of Supervisors' meeting the State Superintendent of Public Works' order was read, should have known that the final paragraph abandoning this section of road to the town was erroneous and carried no force or effect. Although it may well be that the State could have divested itself of the duty of maintenance if the other parts of the Superintendent's order had been transmitted to the Ontario Board of Supervisors, the common-sense interpretation is that the last paragraph nullified the effect of notice. More was necessary to relieve the State than mere transfer of the duty of maintenance by operation of law. If notice was required, as was held to be necessary in the *Queensbury* case (*supra*), then a notification to the county that this section of highway had been abandoned would be meaningless if coupled, as it was here, with a direction to the county to do nothing about it for the reason that the obligation of maintenance was imposed elsewhere. That is particularly true since even the State Engineer's office at that time was unaware of where the duty of maintenance would vest. The State Engineer, on whose recommendation the State Superintendent of Public Works acted in ordering the discontinuance, testified that he did not know who was obligated to undertake maintenance of the abandoned portion of this highway. The final paragraph of the State Superintendent of Public Works' order destroys its effect as notice to the county to undertake maintenance, and the Town of Geneva was charged with no obligation in regard to it whatever. Consequently, it is held, the

State did not divest itself of the legal duty of maintenance, and must respond in damages for claimant's injuries.

The judgment of the Appellate Division and that of the Court of Claims should be reversed, with costs in all courts, and the case remitted to the Court of Claims for an assessment of damages and for other proceedings not inconsistent with this opinion.

DESMOND, J. (dissenting). The State took over in 1910 and continued till 1925 the maintenance of a certain county highway in Ontario County. In 1925, the State, to eliminate a dangerous curve in that road, replaced about 1,100 feet of the old road with a new, differently located piece of road. The State then discontinued (as it had not only the right but the statutory duty to do, as we shall see) maintenance of the old strip. Since that strip was part of a county highway, the duty to keep it in repair or close it, could not, when the State so abandoned it, go anywhere except back to the County of Ontario. The State Superintendent of Public Works, in December, 1926, after the new section had been finished and opened, sent to the Clerk of the Ontario County Board of Supervisors a copy of an official order of the State Public Works Department, which order plainly stated that " the State shall cease to maintain said section upon the completion of the substituted section ". That notice to the Board of Supervisors specifically quoted and called attention to the then section 181 of the Highway Law which mandated in such situations that the State should " cease to maintain   *   *   * [said] section   *   *   * upon the completion of the substituted section ". Ontario County was thus officially put on notice of a public statute and an official order which, by requiring the State to cease maintaining the old section, necessarily meant that all future public duties as to that section of road would automatically pass to the County of Ontario. Since Ontario County owned the highway, such duties could not thereafter be lodged elsewhere. The State had lawfully, finally and forever (as both courts below held) divested itself of all responsibility for repair and maintenance of the old or " cut off " road. Never thereafter did the State have, in fact or law, anything to do with that piece of highway.

Despite all that, the State is being held to damages because the dangerous condition of the road caused an accident, twenty-

two years later. The sole basis for that result is a typographical error found in the notice (*supra*) which the State Superintendent sent to the County of Ontario in 1926. The last paragraph thereof said that the cut-off section of highway was being turned over to " Town of Geneva, Ontario County " for future maintenance and repair. That was a mistake, since any such turnover or turnback of a county highway had to be to the County of Ontario, not to any town. But the error could not have misled anyone and there is no proof or finding that it did. Surely the county knew of its ownership of its own roads. Actually, as the majority opinion herein points out, the then statutes did not provide for any notice at all to be given by the State. But the courts (*Isaac* v. *Town of Queensbury,* 277 N. Y. 37, 48) held, in 1938, that " inasmuch as the determination, affected the rights of person and property, reasonable notice was required." In other words, the State, having assumed the care of a road, could not, secretly and without notice, stop such care, otherwise the public might be left without protection. But, under *Isaac* v. *Town of Queensbury* (*supra*), no particular kind of notice was needful, so long as it was " reasonable ". Certainly, the notice given by the State to the Town of Queensbury in the *Isaac* case and there held to be sufficient, was no fuller or more informative than the notice here given to the County of Ontario. All the notice the Town of Queensbury got was a copy of a Public Service Commission order in a proceeding to which the town was a party, which order, among many other things, provided that the street in question should be discontinued. The State Department of Public Works as such gave the Town of Queensbury no notice at all until after the Isaac accident (see 277 N. Y., p. 49). Nor did the notice given prior to the accident in the *Isaac* case in the form of a Public Service Commission order, say that the reverter would be to the town. From all that it necessarily follows that the notice given in the present instance to the County of Ontario, was ample as to the only fact of which notice had to be given (see the *Isaac* opinion, 277 N. Y., p. 50) — that is, notice that the State was abandoning the old strip. And in the present case we had another and much more informative kind of notice not present in the *Isaac* case (*supra*). That better and fuller notice in our case consisted of the known and obvious fact that after giving the written notice in 1926 the State ignored the cut-off

strip entirely for more than twenty years prior to this accident and instead took care of the new, substituted piece of highway.

The order appealed from should be affirmed, with costs.

CONWAY, Ch. J., FROESSEL and BURKE, JJ., concur with VAN VOORHIS, J.; DESMOND, J., dissents in an opinion in which DYE and FULD, JJ., concur.

Judgments reversed, etc.