Charles T. Major, J.
This claim is to recover for personal injuries suffered by claimant as a result of an accident, which occurred at about 10:40 a.m. on April 14, 1951 on a highway designated as “ Part of Town Line Road access to U. S. Air Base between State Route 298 and the south boundary of Air Base ” in the project agreement for its construction between the Federal Works Administration, representing the Federal Government, and the State Department of Public Works, representing the State of New York.
The project agreement was entered into during World War II emergency, and was completed pursuant to the Defense Highway act of 1941 (55 U. S. Stat. 765, supplementing 39 U. S. Stat. 355 and 42 U. S. Stat. 212; U. S. Code, tit. 23, ch. 3), as the authority for the action taken by the Federal Works Administrator; and chapter 423 of the Laws of 1942 of the State of New York, as the authority for the action taken by the State Department of Public Works.
The claimant contends that the accident was caused by the negligent planning, construction and maintenance of such highway by the State, while the State’s defense is that the planning and construction was made and performed in a proper manner as established by standard practice; that pursuant to section 4 of chapter 423 of the Laws of 1942 the responsibility of maintenance did not rest upon the State; and that, in any event, the claimant was guilty of contributory negligence.
The State took over the portion of the old Town Line Road, changed its alignment, appropriated a perpetual easement in additional property to make such change, and still retained title thereto at the time of the accident. The new highway was constructed in accordance with the State’s plans and specifications, by Warren Brothers Construction Company with whom the State had entered into a contract therefor. The contract was completed and the highway was finally accepted by the State Department of Public Works on June 19, 1944.
The highway, before construction by the State, was a town line road and served as the dividing line between the Towns of Salina and De Witt. The maintenance was carried on by the Town of Salina. No maintenance was carried on by the Town *499 of De Witt, but there is no evidence to indicate a release from De Witt’s participation therein, as provided by section 187 of the Highway Law. Any understanding or agreement not complying with section 187 of the Highway Law is not a release of liability of either party as to any third party not participating in such understanding or agreement. The State had no duty of maintenance prior to the time of the project agreement in June, 1943. The accident happened on that part of the road located upon the easement appropriated by and held in the name o'f the State. The scene of the accident was not on the dividing line between the two towns.
Article 6 of the project contract with the Federal Government contained a clause that:
“ The Highway Department will maintain said project in compliance with said acts of July 11, 1916, and November 9, 1921, out of funds which have been or will be made available therefor by said State in the manner herein set forth, to wit: Maintenance for this project will NOT be provided by Town, County or State of New York.
“ The Highway Department will use every means within its power to insure proper and permanent maintenance of said project, and to that end will provide for the constant making of needed repairs to preserve a smooth-surfaced highway ”.
The statement in the project agreement: “ Maintenance for this project will NOT be provided by Town, County or State of New York ” may have some unexplained purpose, or may have been inserted for some special reason because of the highway’s connection with a military air base in time of war, but as to this claim, it has no application and is without effect. The State of New York cannot escape its duty of maintenance by contract not authorized by the Legislature and cannot delegate such responsibility.
Section 4 of chapter 423 of the Laws of 1942, effective April 12, 1942, provides: ‘‘ Any existing highway which is improved or reconstructed under the provisions of this chapter shall continue to be maintained by the state or municipality now having jurisdiction over such existing highway ”. (Emphasis supplied.)
In interpreting this section, the word ‘ ‘ now ’ ’ signifies the moment the law became effective (April 12, 1942), unless otherwise changed by law between such date and the date of the project agreement. No such change had been made. The State took over the highway as of the date of the signing of the project agreement. At that time, the responsibility for maintenance shifted to the State. Upon completion of such project, *500 the responsibility for maintenance was the duty of the State or the town having such duty prior to the commencement of the project.
In the absence of any agreement between the towns and the State of New York as to maintenance of the highway upon its completion, it naturally follows that the determination of such question rested upon the authority having over-all supervision thereof. The State Superintendent of Public Works was such authority. No such determination was made. Inasmuch as persons and property were involved in such maintenance after the completion of the project, it was the duty of the State to continue the maintenance thereof until notice of transfer was given to the appropriate town or towns by the State Superintendent of Public Works. (Isaac v. Town of Queensbury, 277 N. Y. 37, 48; Geraghty v. State of New York, 309 N. Y. 188.) This notice was never given. The new highway was not turned back to the town or towns. The responsibility for such maintenance remained with the State at the time of the accident.
This was a concrete highway 22 feet wide. On the day of the accident, it was dry and the day was clear and bright. An earth shoulder, varying in width from 2 to 51/2 feet from the concrete to the grass, paralleled each side. The shoulder was rough in spots, sandy, definitely rutted, badly marked and scarred, with stones and obstructions at various intervals. The concrete surface of the road varied from 3 to 61/4 inches higher than the earth shoulders in the vicinity of the accident, and the shoulder was in a hazardous and dangerous condition, definitely out of repair and improperly maintained. It was conceded by all parties to the claim that no maintenance had been supplied to such highway after the completion of the project. There were no warning signs or highway signs near or within proper distance from the scene of the accident to give warning of the dangerous condition of the drop-off, and defective shoulder. The condition had existed for many months before the accident and the State is chargeable with constructive notice thereof. Such condition and lack of attention and maintenance constitute negligence on the part of the State of New York.
There is no evidence that the shoulder had ever been stabilized, but this road had been completed over 6 years before this accident and there is insufficient proof for the court to make a fin ding that the road was not properly constructed.
At the time of the accident, claimant was driving alone in his 1938 Chrysler automobile at about 30 miles per hour. The automobile was in good running order and claimant was pro *501 ceeding on Ms own or right side of the road, traveling in a northerly direction toward the air base, which at the time had been converted into a veterans’ housing project. As he approached the scene of the accident, a truck carrying a concrete mixer and going south or in the opposite direction, “ nosed-out ” of its line of traffic as if to pass another vehicle in front thereof. About half of said truck went over into the lane in which claimant was traveling at which time claimant’s car was about 75 feet distant therefrom. Claimant pulled over to Ms right to avoid such truck, and the two right wheels of his car dropped off the concrete into the rut and rough shoulder, causing him to lose control. He then slowed down his car, but before he was able to bring it to a stop, he struck some object which diverted him back onto the concrete at an angle whereby he collided with the oncoming cement mixer truck, which had returned to its own side of the road. Under the circumstances, the actions of claimant must be judged under the emergency rule. (Schnurr v. State of New York, 279 App. Div. 1119, affd 304 N. Y. 774.)
Claimant had long and extensive experience in operating automobiles and busses. No warnings were posted along the highway of the dangerous and hazardous conditions encountered. This road was not new to claimant. After consideration of all the circumstances involved in this accident, the court finds that the claimant was not guilty of contributory negligence and that he acted as a prudent man would under similar circumstances. The proximate cause of this accident was the negligence of the State of New York in failing to properly maintain the highway in a reasonably safe condition.
As a result of the accident, claimant, 52 years of age, sustained injuries and suffered considerable pain. He sustained a severe cerebral concussion and was unconscious for about 15 hours; a fracture in the axillary portion of the left sixth rib which punctured the covering of the lung, producing blood into the left pleural cavity along with pneumonia in that region; abrasions, lacerations, 5-inch laceration along the left eyebrow closed with five sutures; his left hip joint had an outward and posterior dislocation of the head of the left femur and a fracture through the lower lateral border of the acetabulum, a fragment of which was loose. The rim of his acetabulum was fractured with a possible incomplete fracture of the lower medial area of the head of the femur; fractures in the upper rami of the left pubic bones; transverse fractures in the lateral portion of the upper and lower left rami of the pubic. The fragments in both latter instances are in good alignment and apposition; fracture of the lower ramus of the right pubic bones with some overlap *502 ping of fragments; a buckling or breaking of the cortical bone and marked moderate separation and distortion of both pubic bones at the symphysis pubis. X ray taken on April 17, 1951 showed abnormalities in the left lung indicating lobar pneumonia or an extravasation of fluid caused by a puncture of the lung by the broken rib. In the healing process, there developed an excess of bone growth from the pelvis to the greater trochanter of the femur with demineralization and cyst formation in the head of the femur. He was hospitalized for 19 days at Onondaga General Hospital, and 18 additional days in St. Joseph’s Hospital, Syracuse. He has lost 75% to 80% function of the hip ¡joint. The separation of the pubic bones and the overgrowth of bone will be permanent, causing instability of the pelvis, weakness and limp, and he will at times continue to suffer pain and discomfort. Further operations might reduce the hip restriction by such procedures known as arthrodesis, Moore prosthesis or insertion of a Smith-Petersen cup, all of which are painful and at least temporarily disabling. During claimant’s three weeks’ hospitalization, he was given considerable sedatives to relieve pain, and other medication including penicillin. Treatment also included application of traction, ballast traction and suspension, in bed; and later he used crutches and was given Hubbard tank exercises. His pelvic condition interferes with his operation of motor vehicles, unless such vehicles are equipped with automatic controls. He can cross his right leg over his left leg, but cannot cross his left leg over his right leg, and is required to have assistance in tying his shoe. At times, he has a numbness in his right arm.
Claimant’s disbursements resulting from this accident were as follows:
Onondaga General Hospital, Syracuse........$402.30
St. Joseph’s Hospital, Syracuse.............. 272.00
Dr. John Carter............................ 129.00
Dr. Fairchild .............................. 100.00
Dr. E. Resnick.............................. 350.00
Loss of wages from April 14, 1951 to September 10, 1951 at $74 per week, or a total of $1,554, making a total for medical expenses and loss of wages of $2,807.30.
Claimant has received the sum of $3,500 from the Town of De Witt, and $2,500 from the Town of Salina, or a total of $6,000, in consideration of refraining from bringing suit against said towns, and which covenant not to sue contained a provision therein reserving all rights against the State of New York and others.
*503 By reason of such accident caused by the negligence of the State of New York, claimant sustained personal injuries for which he should be compensated in the sum of $25,000, and the sum of $2,807.30 for disbursements and loss of wages as aforesaid, or the total sum of $27,807.30 as his award, and from which is to be deducted the sum of $6,000 so paid by the Towns of Salina and De Witt, leaving a balance of $21,807.30 for which judgment in favor of claimant is directed.