Russell G. Hunt, J.
In the relocation and straightening of the Hunter-Tannersville State Highway No. 1242, the State, through the Superintendent of Public Works and pursuant to section 30 of the Highway Law, appropriated the fee to slightly over one-half acre of the claimants’ real property located in the town of Hunter, Greene County. Thereafter this claim was filed to recover damages for the fee taking, consequential damages to the claimants’ remaining lands and interest from August 15, 1953 which was the date the contractor allegedly entered on the premises and, amongst others, cut down trees, prior to the formal appropriation on May 7, 1954.
The claimants in 1945 purchased the appropriated land together with others totalling about eight and one-quarter acres of land on both sides of the old State road at the location of the taking; that about seven and one-quarter acres lay on the north side of the old road and about one acre lay on the south side; the larger parcel sloped upwards to only slightly higher elevations off the old road while the one-acre parcel sloped slightly down and away.
The new section of road was constructed on the appropriated land north of the old road. In the work of construction, a deep cut was made through claimants’ lands leaving sharply rising banks and a road bed which was considerably below that of the old road and claimants’ remaining lands. The one-acre parcel thus was separated from the new road by the old road and the new embankment which has varying elevations up to 7 feet; the embankment on the north side of the new road has varying elevations up to 18 feet.
*1003 The claimants contended on the trial that they were entitled to (1) damages for a change of grade in the relocation of the State highway at a lower elevation than the old, (2) damages to the one-acre parcel on the south side of the old road because there was no access between that parcel and the new road, and, it was “land-locked”, (3) damages for the fee taking, and (4) consequential damages to the remaining lands, including damages respecting the loss of trees.
Under the facts here, there was no prior graded road at the place where the new road was established, hence, there was no change of grade (People ex rel. Astor v. Dickey, 157 App. Div. 794, 795, affd. 211 N. Y. 599), but, this does not foreclose the consideration of damages for any adverse effect upon the remaining lands resulting from the construction of the new road at a lower elevation. Damages so found would be consequential, that is, those “ resulting from a direct taking ” (Van Aken v. State of New York, 261 N. Y. 360, 362) and from a consideration of the use to which the appropriated parcel has been put (South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301). If, however, beneficial results flow from the improvement, then such benefits are to be offset against consequential damages (Gilmore v. State of New York, 208 Misc. 427).
There has been no showing that the old road was discontinued by the State pursuant to section 62 of the Highway Law, and, in the absence of such evidence, the presumption is that State maintenance of the old road continues and that the claimants continue to have the right of access thereto (Geraghty v. State of New York, 309 N. Y. 188). The one-acre parcel does have access to the old road and over it in a westerly direction, for several hundred feet, to the new road at the point where both join; the old road, in effect, is a branch of the new. The access afforded over the old road may be less convenient, but, it is suitable and this is all the law requires (Holmes v. State of New York, 279 App. Div. 489; 282 App. Div. 278). In addition, and, applicable to the claimants’ remaining lands on both sides of the new road, there is no evidence that the State appropriated the claimants’ right of access to the new road from the north or south sides or that the new road became a controlled access highway (Highway Law, § 3), accordingly, they have the right of direct access to the new road along their frontage thereon (Griefer v. County of Sullivan, 246 App. Div. 385, affd. 273 N. Y. 515); albeit, they will have to construct their own driveways from the new roadbed, up and over the embankments resulting from the deep cut made through their lands; ‘‘ while the taking of property may greatly inconvenience the *1004 . individual owners affected, it is in the interest and to promote the welfare of the general public. This being so, there is no reason why the citizen, whose land is taken in invitum, should suffer any financial loss that may be prevented by awarding him proximate and consequential damages ” (South Buffalo Ry. Co. v. Kirkover, supra, p. 306). The cost of leveling and grading the embankment and the remaining lands on the north side of the new road was estimated at $6,000.
The lands have not been used for any purpose since their purchase 11 years ago. One of the claimants testified that they were purchased with the object of building a ‘‘ gas station or a motel or for residential, anything I want to put there ”. There is no town zoning law. The lands immediately adjoin the west boundary line of the village of Tannersville and village water and sewerage lines are available to claimants’ premises. The real estate expert for the claimants testified that in his opinion the best available use of the premises before the appropriation was for commercial or residential purposes in a “ purely summer resort ” whose summer population depends on “ whether you have good seasonal weather and so forth ”. The best available use of the remaining lands subsequent to the appropriation, he testified, was not the same and their usefulness was “ practically nil ” after taking into consideration the use to which the taken land was put. In his opinion, the market value of claimants’ lands before the appropriation was $11,000 and the value thereafter was $1,000. The difference of $10,000, he testified, was to compensate the claimants for the land actually taken, the one-acre parcel, which the real estate expert considered as having no access to the new road and ‘‘ landlocked ’’, and, the consequential damages to the remaining lands. The State’s real estate expert valued claimants’ lands before the taking at $3,500 and the after value at $2,500; $1,000 being allowed for all direct and indirect damage; he expressed no opinion respecting the best available use of the lands before or after the appropriation. “It is a rare condemnation proceeding indeed where the experts are not widely apart in their testimony as to value ” (Hazard Lewis Farms v. State of New York, 1 A D 2d 923, 924).
The claimants are entitled to recover the fair market value of the lands taken and any damages which resulted to the remaining lands not only by reason of the direct taking but also by reason of the use to which the property was put by the State {South Buffalo By. Co. v. Kirkover, supra); and, they are entitled to have the fair market value based on the most advan *1005 tageous use to which the property can he put (Hazard Lewis Farms v. State of New York, supra).
Accordingly, and upon all the evidence and after viewing the premises (Court of Claims Act, § 12, subd. 4), I find that the best available use of the premises before the appropriation was for summer resort business or commercial purposes, and, after the appropriation that the new road has not benefited claimants ’ remaining lands, that the remaining premises do not have the same use and have no particular use other than as raw acreage, and, that the market value of the premises before the appropriation was $6,500 and the market value thereafter was $2,000 and that the claimants’ direct and consequential damages are $4,500. Included therein as elements of damage, are allowances for the loss of two trees standing on the lands taken and the loss of 10 trees located on land in the old right of way “ for the deteriorating effect of the absence of those trees upon the remaining property ” (County of Broome v. McKune, 293 N. Y. 809, 810).
With respect to claimants’ demand for interest on the award from August 15, 1953 there was testimony, not contradicted by the State, that the latter’s contractor entered into the new construction work in August, 1953 and cut down trees on claimants’ lands and the old right of way. In this connection, the map in evidence shows that it superseded a prior map which was filed in the office of the Department of State on June 16, 1953. Filing the map in that office authorized the State to “ enter upon and take possession of the property” (Highway Law, § 30, subd. 5). Interest on the award is allowed from August 31, 1953, to the entry of judgment herein.
The decision and findings of fact and conclusions of law are made and filed herewith.