WILLIAM TORREY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25474.)

ADAM FROST, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25475.)

EDWARD FROST, an Infant over the Age of Fourteen Years, by ADAM FROST, His Guardian ad Litem, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25476.)

JOHN KENNEDY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25478.)

Court of Claims, October 3, 1940.

*Daniel F. Matthews,* for the claimants William Torrey and John Kennedy.

*Farnham & Martineau [Walter F. Martineau* of counsel], for the claimants Adam Frost and Edward Frost.

*John J. Bennett, Jr., Attorney-General [Burns F. Barford, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J. On March 27, 1939, the claimants Edward Frost, aged eighteen, John Kennedy, aged twenty, and William Torrey, aged twenty-one, sustained personal injuries when an automobile owned and driven by the claimant Edward Frost ran off the highway and crashed into a tree on the left-hand side thereof. The three young men were riding toward Holland Patent from Rome on a journey from Solvay to Tupper Lake where each hoped to find employment with a road contractor. The two-strip concrete State highway was laid out in a straightaway for a distance of at least half a mile. and except for a slight dip about 800 to 900 feet west of the point of the accident was practically level throughout that extent. Thawing snows had augmented the run-off of the surrounding lands into a nearby stream and on the occasion in question the road was flooded over an area which extended easterly from the point of the accident 75 to 100 feet and westerly from the point of the accident 400 to 500 feet.

The day was bright, the sun was shining and the temperature was well above freezing. The accident occurred at eleven-thirty o'clock in the morning. The driver of the car says he was driving at thirty-five to thirty-eight miles per hour. One of his passengers says he was doing forty miles an hour. The driver of the car had observed as he proceeded from Rome that the road was wet in different places and as he approached the point of the accident he " just noticed the road was wet, didn't pay much attention, went over different places there where it was wet." Actually the road was more than wet. The water through which the car proceeded was three or four inches deep and at the rate of speed at which it was being propelled it got out of control. We find that the driver was negligent and moreover that his negligence was the proximate cause of the accident. If he did not see, he should have seen the pond of water ahead of him and should have reduced the speed of his automobile to a point where he could proceed over the flooded road in safety.

The situation was similar to that which existed in the case of *Warren* v. *State* (219 App. Div. 124), where upon appeal from a

judgment of dismissal in the Court of Claims, Judge VAN KIRK said (p. 128): "The Court of Claims was justified in finding that the proximate cause of the injury was the careless and reckless driving of Mr. Sheldon. This one column of smoke, the size of which is not described further than that it was sufficient to obscure the truck, was in plain view of the claimant and her driver for six hundred feet."

More nearly akin was the situation in the claims of *Canfield* v. *State* (Claim Nos. 23587, 23588). There the driver, when he was seventy-five feet from it, saw a pool of water which extended from twenty to thirty-five feet along the highway and across the highway on his side and to a point two or three feet beyond the center line thereof and which was one to three inches in depth. At the instance of his wife, who was his passenger, the driver slowed down to less than forty miles an hour before he reached the pool of water. We held that his negligence was the proximate cause of the accident and judgment dismissing the claims was affirmed upon appeal. At the same time, the Fourth Department reversed our findings that the State was negligent in the construction and maintenance of the highway. (*Canfield* v. *State*, 244 App. Div. 888; motion for leave to appeal denied, 268 N. Y. 721.)

Likewise we recently dismissed the claims of *Paulsen* (Claim Nos. 25545, 25546) and *Silleman* (Claim No. 25547) upon the ground that the driver Silleman should have observed the water over the highway ahead of him and that his failure to control his automobile was negligence which was the proximate cause of the accident.

We do not hold the passengers here guilty of contributory negligence although John Kennedy, who was riding on the front seat of the car, testified: "I just happened to glance ahead and saw a wet spot some distance ahead of us, and I said nothing, I sat there talking and didn't pay much attention." However, because the negligence of Frost was the proximate cause of this accident, the claims of the passengers must be dismissed.

Although we are dismissing all claims for the reason stated it may be of advantage to refer briefly to what now appears to be a definite trend of the authorities toward holding the State liable in damages for highway accidents occurring outside the patrol or maintenance period. Section 58 of the Highway Law provides: "The State shall not be liable for damages suffered by any person from defects in State highways, except between the first day of May and the fifteenth day of November on such highways as are maintained by the State under such system as the Superintendent of Public Works may adopt."

But under the general waiver provided by chapter 467 of the Laws of 1929 (Ct. Claims Act, former § 12-a) and now broadened by chapter 860 of the Laws of 1939 (Ct. Claims Act, § 8), the State has assumed liability for damages caused by the misfeasance or negligence of its officers or employees " whether such damages were sustained on a highway or otherwise or at any time of the year." (*Miller* v. *State*, [1931] 231 App. Div. 363.) This misfeasance or negligence may be a failure to warn of obstructions as in the *Miller* case or it may be a failure to repair after notice as in *Karl* v. *State* (1939) (279 N. Y. 555, 559). In the *Karl* case the accident occurred November twentieth, five days after the statutory maintenance season closed. However, the State's engineer had written notice on November tenth " of previous accidents and of the slippery and dangerous condition of the pavement, and during those ten days took no steps to guard the traveling public from the danger of which he had notice."

For instances of liability for highway accidents outside the maintenance period, see, also, *Floss* v. *State* (240 App. Div. 944); *Ross* v. *State* (265 N. Y. 632); *Rogers* v. *State* (254 App. Div. 927, 928); *Doulin* v. *State* (277 N. Y. 558); *Bulson* v. *State* (Claims Nos. 24161, 24162); *Matt* v. *State* (Claims Nos. 25263, 25264); *Hazard* v. *State* (Claims Nos. 24796, 24797).

There is abundant testimony in this record that the highway in question over a period of years was always flooded at times when thawing snow brought excessive water to the surrounding fields. There is testimony, voiced by the town highway superintendent, a man of practical experience and apparent good sense, descriptive of methods which might have been used to correct the condition. There is no testimony in the record which disputes him.

It would seem that the State's engineers might have devised means which would have permitted a quick run-off of flood waters at times of thaw or freshet. We do not decide the question of whether or not it was their duty to have done so because we are dismissing the claims upon the grounds indicated. We do not say that there was a defect existing in the previous patrol season, and of which there was more than ample notice, which, not having been corrected, contributed to an accident which occurred outside of the statutory patrol period. But, did we not believe that this accident was proximately caused by the negligent driving of Frost, there would be strong inclination to so find and to hold the State liable in damages.

One other point on the subject of negligence. It appears that the highway patrolman, although not regularly patroling the road, did know about the flood conditions. On the night before the accident he had posted lighted red lanterns to warn travelers thereof. He

had taken the lanterns down on the morning of the accident leaving no flags or signals in their place. We hold that none were needed in the daylight because the pond of water was warning in itself.

There is another subject which merits discussion. In respect to the claims of Frost and Kennedy, the Attorney-General further urges dismissal upon the ground of lack of jurisdiction. Frost was eighteen years of age when the accident occurred and when his claim was filed. Kennedy was twenty years of age when the accident occurred and when his claim was filed, but reached twenty-one years on August 23, 1939. Their claims were filed June 9, 1939. Trial was begun September 12, 1939. Their claims were verified by guardians *ad litem* who were appointed, respectively, by orders granted by justices of the Supreme Court. Such appointment was not in compliance with the provisions of section 202 of the Civil Practice Act, which read as follows: " Guardian *ad litem* generally. When an infant is a party he must appear by a guardian *ad litem* who shall be appointed by the court in which the action is brought or about to be brought or a judge thereof; and if the action is in the Supreme Court the guardian may be appointed by the county judge of the county where the action is triable; provided, however, that in an action for partition, the guardian *ad litem* can be appointed by the court. Rules shall be made governing the appointment, qualifications, security, powers, duties and compensation of such guardian."

We quote also rule 22 of the Court of Claims Rules as follows: Guardian *ad litem*. " A guardian *ad litem* may be appointed by the court, or one of the judges thereof, as provided by the Civil Practice Act and the Rules of Civil Practice."

Infancy does not incapacitate from bringing an action. The infant is the real party although he sues by the guardian *ad litem*. (*Murphy* v. *Village of Fort Edward*, 213 N. Y. 397, 401.) His situation is distinct from that of an administrator whose cause of action does not accrue until his appointment. (*Crapo* v. *City of Syracuse*, 183 N. Y. 395, 400; *Blauvelt* v. *State*, 160 Misc. 319; affd., 250 App. Div. 834.) (See, also, *Panzer* v. *State*, Claim No. 23985, not reported.)

In *Schaefer* v. *State* (247 App. Div. 833) a guardian *ad litem* was appointed by a justice of the Supreme Court but no claim or notice of intention was filed within the statutory time. We granted an order appointing a guardian *ad litem nunc pro tunc* as of the date of the Supreme Court order, but held that as the infant had not been mentally or physically incapacitated during the sixty days succeeding his accident he had not presented an excuse for delay in giving the notice required by the then section 12-a of the Court of Claims

Act and for that reason could not recover. (See *Winter* v. *City of Niagara Falls*, 190 N. Y. 198; *Walden* v. *City of Jamestown*, 178 id. 213.) In addition we dismissed the Schaefer claim upon the merits and the question of jurisdiction is not referred to in the *per curiam* opinion rendered by the Third Department. Nevertheless, the record is clear upon the point of jurisdictional defect.

More recently (July 31, 1940) in the claims of *Cummings* (Claim No. 25292) and *Selinsky* (Claim No. 25293) where the notices of intention were verified respectively by guardians *ad litem* appointed by the Supreme Court, we refused to find as a conclusion of law that this fact denied this court jurisdiction. This may have been error. As we dismissed these two cases on the merits and as no appeal has been taken our determination will not be reviewed.

To be consistent we refuse a similar request herein. The Supreme Court has general jurisdiction of the person and property of infants. The State has not been prejudiced in any way because the claims filed by the guardians *ad litem* appointed by the Supreme Court have given the State's officers timely notice and ample opportunity to investigate and defend the suits. But the question, although technical, is not free from doubt. It seems apparent that the better practice to follow would be strict compliance with the statute and rules which call for application to a judge of the Court of Claims for the appointment of a guardian *ad litem* of an infant who intends to prosecute his cause of action in this court.

Enter decision in accordance with the foregoing opinion.

MURPHY, J., concurs.