LOEL M. SEELYE, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 26989.)

JESSIE SEELYE, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 26990.)

Court of Claims, April 1, 1942.

*John J. Carey,* for the claimants.

*John J. Bennett, Jr., Attorney-General [John M. Dooley, Assistant Attorney-General,* of counsel], for the defendant.

DYE, J.   The within claims are for injuries to person and property based on negligence.   They arose out of the same accident and

were tried together.   At the close of the claimants' proof, the State moved for a dismissal of each claim.

The damages were sustained when Mrs. Seelye, the owner and operator of an automobile in which Mr. Seeley was a passenger, while proceeding easterly through the village of Avon on October 3, 1941, at a speed of about twenty-five miles per hour, drove the right front and rear wheels off the concrete pavement into a rut in the unpaved or gravel shoulder alongside.   This point was about fifteen feet easterly of the end of  a paved shoulder, made of bituminous material called black top.   The car wheels continued in the rut about forty feet, when the car regained the paved portion, but by this time the driver had lost control; it then proceeded diagonally across the roadway and ran head-on into  an elm tree some 110 to 180 feet distant.   Just prior to the accident it had been raining: but had cleared so that visibility was good.   The roadway was wet and water stood in the rut.

Mr. Zorsch, a district engineer employed by the State Highway Department, was called as a witness for the claimants.   He produced a map showing State Highway Route No. 6 (Highway Law, § 340), sometimes called United States Route 5–20 within the village, as finally built in 1938, and from it testified that the width of pavement constituting the State's portion consisted of three lanes of concrete, each ten feet in width and aggregating a total of thirty feet: that through a portion of the village, additional concrete lanes thirteen feet in width had been built at village expense on both the north and south sides, making a total width of fifty-six feet.   At the end of the southerly lane, proceeding easterly, there was a paved shoulder (referred to as a reducer strip), made of bituminous material six feet in width which gradually narrowed to a width of one foot six inches; forming a part of the reducer strip was a run of bank gravel shoulder seven feet in width at the westerly end where it adjoined the southerly lane of concrete which gradually narrowed for a distance of ninety-six feet and merged with the run of bank gravel shoulder seven feet in width, adjacent to the State's portion.   This testimony established the State's right of way limits within the village.

Mr. Clement was called as a witness for the claimants, and testified on cross-examination that during the summer of 1941, and prior to the accident, holes existing in the north shoulder of the highway at a point approximately opposite the bituminous reducer strip were repaired by the village commissioner of streets.

To find that the claimants have established a *prima facie* case, requiring a denial of the motions, the court must give their proof " the benefit of every favorable inference which can reasonably

be drawn." (*Faber* v. *City of New York,* 213 N. Y. 411, 414.) The burden rests upon the claimants to establish that

a. The highway was defective; or,

b. The officers and employees of the State were negligent in the performance of their duty.

The planning, construction and maintenance of the State highway system has become one of the great functions of the State. As State highways must necessarily be routed through counties, towns and villages, laws have been enacted regulating and fixing the State's relationship to its component political subdivisions in the carrying on of its business of highway administration. For damages to persons and property resulting from this activity, the State has made certain rules fixing the time when, and under what circumstances liability will be assumed. Liability does not exist at common law — it must be predicated upon an affirmative constitutional or legislative assumption.

Section 58 of the Highway Law fixes the time and place when liability attaches to the State for damages for injuries to person and property occasioned by defects in the highway. The instant claims arose within the time limit. The place was within an incorporated village and outside of the width of pavement constituting the State's right of way. Does this fact meet the requirement of the law which says: " Within the limits of incorporated villages the State shall maintain a width of pavement equal to the width of pavement constructed or improved at the expense of the State, if a State highway, the location of the State's portion of such roadway within said incorporated limits to be determined by the center line of the roadway as shown on the plans on file with the Department of Public Works and the State shall be liable for damages to persons or property only when such damage shall occur as a result of the defective condition of the portion of improved highway as above described."

Statutes in derogation of the sovereignty of the State must be strictly construed, and a waiver of liability must be clearly expressed. (*Litchfield* v. *Bond,* 186 N. Y. 66; *Smith* v. *State of New York,* 227 id. 405.)

It has been held that the State is not liable to abutting property owners for damages for improvements made within their right of way. (*County of Chautauqua* v. *Swanson,* 260 App. Div. 124.)

The language of the statute is clear. The rut, if it was the proximate producing cause of the accident, was outside of the State's right of way. Within the State's right of way, no defect is claimed. We must, and, therefore, do conclude that the highway was not defective within the meaning of section 58 of the Highway Law.

(*Miller* v. *State of New York*, 231 App. Div. 363; *Hinds* v. *State of New York*, 144 Misc. 464; affd., 240 App. Div. 742; *Marino* v. *State of New York*, 257 id. 734; *Rider* v. *State of New York*, 177 Misc. 168; affd., 263 App. Div. 1022.)

But this is not necessarily fatal if the proof shows that the defect, whether occurring within or without the time limit, is occasioned by or results from the negligence of the State. (*Miller* v. *State of New York, supra.*) Thus claims ordinarily barred by section 58 can now be considered under section 8 of the Court of Claims Act (Laws of 1939, chap. 860), which extends and broadens former section 12-a of the Court of Claims Act. This has been deemed an assumption of liability for damages caused by misfeasance or negligence of the officers or employees of the State while acting as such officers or employees, " ' whether such damages were sustained on a highway or otherwise or at any time of the year.' " (*Torrey* v. *State of New York*, 175 Misc. 259 [RYAN, J.].)

Facts of negligence must be proven. To find negligence we must first find a duty. What facts, if any, produced by the claimants show the existence of a duty on the State to maintain and repair the gravel shoulder outside of its right of way, within the village? The record is silent as to the activities of the officers and employees of the State, either by way of inspection, supervision, control, erection of warning signs, or the doing of any act whatsoever in relation to the shoulder from which the recognition or assumption of a duty to maintain and repair is shown, or might be inferred. In the performance of what duty, then, have the officers and employees of the State been remiss? Within the State's right of way line, none is claimed; without the State's right of way line, none is proven. Without facts, even the broad liberality of section 8 of the Court of Claims Act cannot be invoked, and we must look elsewhere for the assumption of liability by the State.

The claimants cite that part of section 46 of the Highway Law which provides that " A State highway within a village shall be of the same width and type of construction as a highway outside of the village which connects with the highway within the village, unless a greater width or different type of construction is desired by the municipality." With this as a premise, coupled with the judicial holding that the shoulder forms an integral part of the highway, they argue that the State must perforce maintain the shoulder within the village limits. The difficulty with this argument is that there is no proof as to the width and type of construction of the highway outside of the village, and, unfortunately, the practice does not permit the court to assume facts not proven, particularly when the sovereign immunity of the State is involved.

It would seem, therefore, that this contention is without merit, and the court so holds.

Claimants also cite section 12 of the Highway Law to support the contention that the State is bound to maintain the unpaved shoulder under the circumstances herein obtaining. We have pointed out above the construction that has been placed upon section 58, as modified by section 8 of the Court of Claims Act, which has been held to extend liability to acts of misfeasance of officers and employees in the performance of their highway duties. Referring to section 12, we note the duties of the Superintendent of Public Works in respect to State highways passing through incorporated villages, and whenever additional widths have been constructed at village expense, " the additional width of pavement shall be deemed to be a part of the highway and shall be maintained by the Superintendent of Public Works as provided herein, but in no case * * * shall the State be responsible for the maintenance of any curb or of any paved gutter or paved shoulder * * *." The record shows that there was a paved shoulder made of bituminous material at the site of the accident, some six feet wide where it adjoined the village lane of concrete and extended easterly a distance of 200 feet, tapering down to a width of one foot six inches.

As to this, the State Superintendent of Public Works has an exception; it forms no part of his maintenance duty. The rut, however, began at the end of the paved shoulder and continued in the unpaved shoulder alongside of the State's concrete lane for a distance of about forty feet when it tapered out level with the surface of the concrete. Does this fact, *i. e.*, the existence of the rut in the gravel shoulder within the village limits create, *ipso facto*, a liability on the State within the meaning of this section? The answer is to be found in that part of section 12 of the Highway Law, which provides: " That on any highway maintained by the State, the Superintendent *shall have authority to* * * * *repair any unpaved shoulder outside of the pavement maintained by the State, where necessary for the protection of such pavement.*" (Italics supplied.) This confers on the State Superintendent of Public Works a right or privilege, as distinguished from a mandatory duty. It is for him to decide whether conditions outside of the right of way limit are such that his intervention is necessary for the protection of the pavement within the limits of the State's right of way.

There is no proof that the Superintendent of Public Works had ever exercised this authority within the village of Avon, or that he had ever deemed it " necessary for the protection of such pavement." Nor are there any facts or circumstances shown from

which the Superintendent of Public Works might reasonably have been required, or expected, to exercise this discretionary authority, and that his failure to do so constituted such an arbitrary attitude as to amount to a neglect of duty. In fact, the only proof we have here as to repairs is that given by the claimants' own witness who testified that the Avon village street repair crew had fixed holes in the north shoulder at a point approximately opposite the site of the accident, within the same season, and sometime prior to the accident, presumably within the scope and authority of the Village Law.

Giving all the circumstances attendant on the accident the benefit of the most favorable inference, there is still insufficient evidence to justify a finding of misfeasance and negligence on the part of the Superintendent of Public Works and his employees in the performance of any duty imposed by section 12 of the Highway Law. The presumption of law is that officers perform their legal duty. The burden of proving the contrary, and in this instance, negligence, rests upon the claimants. The claimants here have failed to meet this burden in the first instance. Without such a finding of fact, this court is not justified in holding that section 12 of the Highway Law is a waiver of sovereign immunity, even though we read it in connection with section 8 of the Court of Claims Act and apply the broad construction which the courts have given it in connection with section 58 of the Highway Law.

It is a basic maxim of statutory construction and interpretation that the intention of the Legislature is to be derived from a reading of the statute as a whole and not a single or isolated section.

Reading the Highway Law as a whole, and particularly sections 12, 46 and 58, we arrive at the conclusion that the State assumes liability for damages to person and property growing out of highway accidents due to defect of construction, or misfeasance of officers and employees, only when the claimant has established a *prima facie* claim in the first instance, or when disputed, has established same by a fair preponderance of the credible testimony within the scope and meaning of the Highway Law as the same has been deemed modified by section 8 of the Court of Claims Act.

If any ambiguity exists in the Highway Law as to the respective duty of State and village to maintain and repair the shoulder outside of the State's right of way limits within the village, and we think none does exist, such ambiguity has been resolved by the practical construction placed upon it by the village street commissioner in making repairs to the unpaved shoulder.

While it is not for this court to pass on the liability of the village of Avon, we cannot resist the opportunity to observe that if the

village street commissioner knew or ought to have known of the rut, if such was the sole proximate cause of the accident, and failed to remedy it or to give reasonable and sufficient notice of its existence, the village, rather than the State, was chargeable with liability for negligence. (*Isaac v. Town of Queensbury*, 277 N. Y. 37.)

There remains only the question of negligence of the driver, causing or contributing to the happening of the accident and whether such negligence is attributable to the passenger. In view of the conclusion that the claimants have failed to meet the burden of proving negligence on the part of the State as the proximate cause of the accident, no findings of fact either as to the freedom from, or guilt of the driver as to her own negligence have been made.

In our opinion, the claimants have failed to show facts sufficient to establish a *prima facie* case, and the motions of the Attorney-General to dismiss each claim must be granted.

Submit orders.