Bernard Ryan, P. J.
On December 9, 1955 claimant was employed as a bartender at the Old Country Inn, a tavern owned and occupied by one Henry Cordts, and located at 312 Old Country Road, Hicksville, an unincorporated village in the Town of Oyster Bay, Nassau County. At about 1:30 the following morning claimant closed the place and proceeded to walk along Old Country Road in an easterly direction until he reached the vicinity of the intersection of the Newbridge Road where he crossed in back of a gas station located on the corner. That brought him out onto Newbridge Road. He proceeded thereon in a northerly direction past the marketing area, past Stock’s Funeral Home and went along in front of premises owned and occupied by one Wortman at 112 Newbridge Road. Ordinarily, after he finished his day’s work, claimant would proceed home by means of his own automobile but on this day that conveyance was being used by members of his family so he had to make other arrangements. The record does not clearly indicate whether claimant intended to walk all the way to his home, which was in Hollis, New York, or was on his way to a taxi stand to arrange for transportation to take him home. The point is of no importance. He was lawfully upon the highway, walking on a sidewalk on the westerly side thereof. In front of the Wortman *76 home there was a dark area and in this dark area one slab of the concrete sidewalk was raised above the adjoining slab. Claimant was unfamiliar with the area as it was the first time that he had walked along there and he did not observe the condition before he fell. His toe hit the elevated slab and he went down, his right hand hit the pavement, his arm crumpled and he sustained a dislocation of the right humerus with fracture of the greater tuberosity. For his personal injuries claimant brings this suit.
Newbridge Road at Wortman’s south line was 61.30 feet wide and at Wortman’s north line was 62 feet wide. Within this space was a 20-foot pavement for vehicular traffic and on the westerly side thereof a 4-foot concrete sidewalk. The easterly edge of the concrete sidewalk and the westerly edge of the concrete pavement were 15.2 feet apart. In the distance from Wort-man’s south line to his north line there were utility poles and maple trees in substantial alignment and in close proximity to the sidewalk. Claimant fell near a gateway opening onto the driveway to the Wortman property and at a point 108 feet south of Wortman’s north line. One of the light poles was 60 feet to the north of the break in the sidewalk; the other was 50 feet south of the break.
Claimant testified that the difference in elevation between the two concrete sidewalk slabs was 2% inches as he observed them after he had fallen on the night of December 9, 1955, and on another occasion when he returned to the scene accompanied by his wife. The wife did not testify. Indeed no one testified to any exact measurements as of the date of the accident. For corroboration claimant relies upon the photographs, Exhibits 3 and 4. The person who used the camera to produce these two photographs was not called to testify. However, the witness Wortman identified the condition shown in them as one which had existed more than five years prior to the trial but which had been repaired, in his words, “fixed,” at some time before the trial. Wortman’s testimony is to some extent additional corroboration that the difference in elevation was greater on the night of the accident than on April 6, 1959 the date on which measurements were made by a land surveyor -who was called as a witness but who first visited the scene only one week before the trial.
We are satisfied that the sidewalk was out of repair in December, 1955 and that the difference in elevation was sufficient to create a dangerous condition. Too, we are satisfied that the conditions of disrepair had existed for a sufficient length of time *77 to support a finding of constructive notice to responsible parties of its existence and to hold those responsible in negligence. We so find.
But the serious question in this case is who was responsible for the maintenance of the defective sidewalk. Wortman did not know who had made the repairs but he did testify that he had observed maintenance forces of the State of New York’s Department of Public Works maintaining the highway and patching holes in the road when necessary. He also testified that State employees had surveyed the property two weeks prior to the trial “with the intention of widening the road.” None of these statements was refuted by the Attorney-General and an examination before trial of one Everett, an employee of the Department of Public Works in charge of maintenance of State roads in Nassau County and western Suffolk, had disclosed that on December 9,1955 the Newbridge Road, Hicksville, Town of Oyster Bay, was a State highway under the supervision and maintenance of the State of New York.
Upon the trial counsel for the claimant offered to stipulate on the record that the sidewalk had been constructed in 1927 by one Vario, a contractor for the Hicksville Sidewalk District. But he would not concede that the maintenance of the sidewalk was the responsibility of the Town of Oyster Bay after the sidewalk district had been abolished pursuant to statute. (See L. 1945, ch. 804, § 2, eff. Jan. 1, 1946, which enactment is Town Law, § 202-c, subd. 3.) We find nothing therein to indicate a legislative intent to transfer from the State of New York, or grant to a town, jurisdiction over any sidewalk lying within the right of way of a State highway. The maintenance and repair of improved State highways in towns and villages is under the direct supervision and control, and is the responsibility of, the Superintendent of Public Works. (Highway Law, § 12.) Moreover, section 54 of the Highway Law provides for construction of a sidewalk by a county “ along any improved state highway” (emphasis supplied) but specifically forbids the construction of any walk or path within the right of way of a State highway unless with the approval of the Superintendent of Public Works. These statutes place the control of the State’s highway right of way in the hands of that official.
Upon the trial the Attorney-General invoked subdivision 18 of section 140 of the Highway Law. That provides that it is one of the duties of a Town Superintendent of Highways to “ Maintain all sidewalks in the town constructed by the state adjacent to state highways and all sidewalks in the town constructed by the *78 county adjacent to county roads ”. (Emphasis supplied.) But in this case the road was not adjacent to the State highway but was within the right of way thereof. This fact makes the situation which here confronts us distinguishable from that in Marino v. State of New York (257 App. Div. 734 [1939]) wherein there was an entire absence of proof that the sidewalk was within the highway boundaries and a failure to show that the State had done anything to maintain it. Here the claimant has established prima facie that the sidewalk was within the highway boundaries and that the State of New York was maintaining the highway. As the defense rested its case without calling any witnesses to refute these facts the Attorney-General’s motion to dismiss for failure to preponderate must be denied.
The decision of Schlatter v. Town of Hempstead (182 Misc. 545 [1943]) cited by the trial deputy is not authority to the contrary. As we read Mr. Justice Johítsow’s opinion in the Schlatter case it appears to us that it holds merely that failure to give the notice required by subdivision 3 of section 215 of the Highway Law was sufficient ground for dismissal of the complaint, a conclusion previously reached by Mr. Justice Hooley in Strauch v. Town of Oyster Bay (25 N. Y. S. 2d 809 [1941]). In both cases the plaintiff was permitted to serve an amended complaint. In the Strauch case the highway was a county road. In the Schlatter case the highway was a State road but the allegation was that the sidewalk had been constructed by and maintained by the defendant town. We regard neither case as an authority for a holding that the provisions of subdivision 18 of section 140 of the Highway Law exclude the possibility that the State of New York may be liable for a sidewalk maintained by it within its right of way.
Upon the whole record the court now does find that the sidewalk was within the right of way of the State highway; that the State of New York, Department of Public Works, had constructive notice of its defective condition; that it was negligently maintained; that claimant was free from contributory negligence; that the State of New York is liable to him for his personal injuries.
Following his accident claimant sustained loss of earnings for 16 weeks at $85 a week. During 10 weeks his arm was in a cast. His hospital and medical expenses totaled $220.95. There was some atrophy of the deltoid and biceps muscles with restriction of motion in the right shoulder joint; restriction of extension and abduction of the shoulder to 160 degrees or a 20-degree loss with about 10 degrees restriction of internal *79 rotation. There was a 15% partial permanent disability of the right shoulder.
We award claimant $5,500 for personal injuries and special damages totaling $1,580.95, the total amount $7,080.95. Let judgment be entered accordingly.