OPINION OF THE COURT
Frank S. Rossetti, J.
This claim is for damages arising from injuries sustained by claimant in a fall on a sidewalk along a State highway. Claimant contends defendant’s negligent construction and maintenance created a dangerous condition which caused her fall and consequential injuries. The State claims it did not construct the dangerous condition and was not responsible for the maintenance of the sidewalk where the condition was located. Upon the parties’ stipulation, the court ordered the trial bifurcated, with liability being tried in the instant proceeding and damages to be tried later, if necessary.
On June 3, 1977, at about 9:30 a.m., claimant was walking westerly on a sidewalk running along the south side of Hemp-stead Turnpike in the Unincorporated Village or Hamlet of Elmont, Town of Hempstead, Nassau County. Hempstead Turnpike at the subject time and place was and is a State highway. (See Highway Law, § 341, subd 29, par 1.) Mrs. Lorraine Van Etten was accompanying a friend on a visit to the friend’s daughter. She was talking with her friend and as they approached the intersection of Hempstead Turnpike with Elzey Avenue (a side street running south from the turnpike), claimant’s left foot gave way, her shoe came off and she fell forward into the Elzey Avenue roadway.
The place where Mrs. Van Etten’s left foot failed was at the edge of a second sidewalk which lay upon and covered most of the lower, regular sidewalk. The regular sidewalk ran along both Hempstead Turnpike and Elzey Avenue and covered the entire area between those roads’ curbs and the building on the southwest corner there. The top, second sidewalk was rectangular and ran along Hempstead Turnpike for 40 feet in front of said building. It extended out (north) from the building to about 3 feet from the Hempstead Turnpike curb. Its western edge (where the accident occurred) was 9 feet east of the Elzey Avenue curb, along the same line as the building’s western or Elzey Avenue wall. The upper sidewalk was 7 inches higher *489 than the regular sidewalk along its Hempstead Turnpike edge and 7 to 3 inches higher along its Elzey Avenue edge.[1]
As claimant walked toward Elzey Avenue prior to her fall, she and her friend were approximately in the middle of the top sidewalk, with claimant being on the left (south) of its center (i.e., closer to the building). The top sidewalk was two slabs wide and the Elzey Avenue edge of the slab closest to the building was chipped away so it was rough and uneven. Thus as Mrs. Van Etten approached the western or Elzey Avenue of the top sidewalk, she came to a step down whose edge was partially chipped or eroded away. Claimant .and her friend testified that claimant’s fall started at a part of this chipped edge.
The State admits to constructing sidewalks along Hemp-stead Turnpike, including at the site of the subject accident, in a reconstruction project during the late 1940’s. It claims, however, that it built only lower, regular sidewalk and does not know who built the top sidewalk. Defendant further argues in effect that since the lower sidewalk was constructed by the State adjacent to a State highway in a town, the maintenance of the sidewalk in general (including seemingly the alleged negligent construction or existence of the upper sidewalk) was the responsibility of the Town of Hempstead by virtue of statute, to wit, subdivision 18 of section 140 of the Highway Law. It concludes it is therefore not liable for either negligent construction or maintenance of the top sidewalk. Claimant contends to the contrary, namely, the State did build the top sidewalk during its 1940’s sidewalk construction and the State is liable for negligent maintenance because the said statute is inapplicable or, alternatively, ineffective to relieve defendant of its nondelegable general duty to maintain State highways.
On the instant record, we find claimant has failed to prove either State construction of the top sidewalk or State responsibility for maintenance of sidewalks at the subject location. Claimant’s first failure involves an application of the general legal principle that where there are several reasonably possible explanations for an accident and one is consistent with defendant’s freedom from negligence, claimant will be deemed to have not met her burden of establishing State culpability *490 by a preponderance of the evidence. (See, e.g., Boyce Motor Lines v State of New York, 280 App Div 693, 696, affd 306 NY 801; see, also, Court of Claims Act, § 12, subd 1.) Claimant’s second failure results from the reasonable interpretation and proper construction of the relevant statutory provisions under the circumstances at bar.
Dealing first with the construction of the top sidewalk, we find in essence that while there is a very real possibility the State constructed same, it is also reasonably possible that others did, such as the Town of Hempstead, Nassau County, or abutting private landowners. Claimant’s failure to prove State construction appears to be primarily a function of the remoteness in time of the State’s 1940’s project. The evidence indicated that the State employees involved in this over 30-year-old project are now either dead or retired. Also, apparently no records exist which show if any work was done by defendant at the subject location beyond that disclosed in the original State construction plans (i.e., such as after the fact "as built” drawings). The said construction plans show only the planned construction of the lower, regular sidewalk, yet claimant points to a special note therein as evidence of State construction of a top sidewalk at the subject location. However, this note applied only to the Holland Avenue corner immediately east of the subject Elzey Avenue corner and claimant presented no sufficient proof that the relevant item in the note (Item 105S) was in fact for a top sidewalk.[2] One of claimant’s photos does show a top sidewalk at the said Holland Avenue corner similar to the subject one at the Elzey Avenue corner, but, without adequate proof of what the said Item 105S entailed, it would be improper speculation for this court to conclude the Holland Avenue top sidewalk was built thereunder. More importantly, without proof the said item was in fact constructed at the Elzey Avenue corner, it would be speculation on speculation to conclude that the subject Elzey Avenue top sidewalk was built by defendant as part of the said project. Claimant’s other would be proof and arguments on this point were unconvincing, particularly to the extent they were based on what appear to be misapprehensions concerning the project’s contract plans and the general State contract *491 specifications. The court is accordingly constrained to find claimant has not adequately proven that the State constructed the subject top sidewalk and thereby created a dangerous condition.
The only other basis for State liability is if it had a continuing duty of maintenance after it built the lower, regular sidewalk.[3] Claimant contends the State had this duty because the sidewalks here were within the State’s right of way and the State was responsible therefor under its general duty to maintain State highways. We note claimant was not able to point to evidence unequivocably defining the State’s right of way at the subject location, but, from the testimony of a State engineer and a Town of Hempstead official, as well as the noted construction plans and other evidence, we believe it not unreasonable to infer that the State constructed the lower regular sidewalk in the right of way of its highway.[4] In any event, we also believe there was no State maintenance responsibility for the subject sidewalks whether they were technically wholly or partially within or without said right of way. This follows from the proper construction of the said subdivision 18 of section 140 of the Highway Law.
This statute states, inter alla, that the Town Superintendent of Highways (see Highway Law, § 2, subd 3) shall "[m]aintain all sidewalks in the town constructed by the state adjacent to state highways”. (Highway Law, § 140, subd 18.) Claimant argues this subdivision is inapposite here on the ground it should be deemed to apply only to sidewalks constructed by the State outside its right of way, not those within it. She construes the phrase "adjacent to state highways” to mean adjacent to the right of ways of the highways, not the roadways thereof. Alternatively, she argues that even if applicable, the statute does not relieve the State of maintenance responsibility for sidewalks at the subject location, but merely makes the Town of Hempstead also responsible. We find both arguments contrary to the proper construction of the statute.
We observe initially that the Highway Law does not conclusively or completely define the subject phrase as used in the *492 said subdivision.[5] Also, other or subsequent legislative uses thereof were not shown to so define it or otherwise irrefragably establish its meaning (see, also, McKinney’s Cons Laws of NY, Book 1, Statutes, § 75, subd a). Nonetheless, the court believes the true meaning and intent of the statute is determinable from a reasonable, common sense interpretation thereof based on the applicable rules of statutory construction.
The primary consideration in construing a statute is of course the intent of the Legislature in enacting it. (See McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 92, 235.) We think this intent is adequately discernible from the legislative history of the statute (McKinney’s Cons Laws of NY, Book 1, Statutes, § 124) and its subsequent construction (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 128, 129).
At common law there was no duty on the State to provide for the construction or maintenance of public highways. (See McAfee v State of New York, 1 Misc 2d 545, 549, and cases cited). Such duty in this State has arisen by specific legislative enactment and since in derogation of the common law and the State’s sovereign immunity, it should be strictly construed and extended only to the extent required. (See Smith v State of New York, 227 NY 405, 410; cited in Seelye v State of New York, 178 Misc 278, 280, affd 267 App Div 941; McKinney’s Cons Laws of NY, Book 1, Statutes, § 301, subds a-c.)
In 1934, the State Legislature directed that a general study be made of road and traffic conditions throughout the State. This study and the resulting report (NY Legis Doc, 1936, No. 89; see McKinney’s Cons Laws of NY, Book 1, Statutes, § 125, subd b) led to the complete recodification of the Highway Law (L 1936, ch 63; see NY Legis Doc, 1937, No. 67, p 10), the first such revision since 1909 (see NY Legis Doc, 1936, No. 89, p 53). A major consideration in the study and report was finances, a not unexpected concern in view of the depression then extant.
One of the report’s recommendations was that the State be given the power to build sidewalks along its highways outside of cities and villages. (NY Legis Doc, 1936, No. 89, pp 38-39, 69, par [2].) Its purpose was to reduce the number of pedes *493 trian deaths on these usually high speed and heavily traveled roads. (NY Legis Doc, 1936, No. 89, pp 38, 39, 52-53.) The report indicated that the policy in this State up to this time was for towns and counties to be responsible for the construction and maintenance of sidewalks along these roads (NY Legis Doc, 1936, No. 89, p 38) and apparently these local political subdivisions were not adequately fulfilling these responsibilities, probably because of the increasing financial burden involved and the said subdivisions’ decreasing ability to bear it. Under then existing law, the State was not authorized to construct such sidewalks, much less maintain them. (NY Legis Doc, 1936, No. 89, p 39.)
It was therefore recommended that the State be given the legal authority to construct these sidewalks. However, in an apparent attempt to avoid excessive expense to the State, that authority was to be permissive rather than mandatory (i.e., the State would construct the sidewalks when and where it deemed necessary). Further, and more importantly to the case at bar, the maintenance of the sidewalks once built would be with the localities, not the State, presumably as part of their pre-existing general responsibilities for sidewalks within their geographical limits. This recommendation was statutorily implemented by adding the authority to construct sidewalks to the permissive powers of the State Superintendent of Public Works (now the State Commissioner of Transportation — see L 1971, ch 1110) and by specifying their maintenance was a mandatory duty of town superintendents. (L 1937, ch 833, §§ 1, 3.)[6] Significantly, the State’s then existing general duty of maintaining its highways in towns was not amended. (See Highway Law, § 12; McKinney’s Cons Laws of NY, Book 1, Statutes, § 74.) As noted (see p 493, supra), this duty had not included the maintenance of State constructed sidewalks along State highways for the simple reason the State had not previously had the power to build sidewalks along highways. Hence the addition to the State’s powers of construction did not carry with it any correlative change in or addition to its duty of maintenance. (See cases cited p 492, supra; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 153, 301, subds a-c.)
*494 Consequently, we conclude that when the Legislature used the phrase "adjacent to state highways” in said subdivision 18 of section 140 of the Highway Law (and Highway Law, § 10, subd 22), it intended the phrase in its natural and ordinary meaning of adjacent to the State roadway. (See McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 93, 94, 232.) We do not believe it intended the technical meaning of adjacent to the State’s right of way proffered by claimant. (See, also, McKinney’s Cons Laws of NY, Book 1, Statutes, § 96.) Pertinent to our conclusion is the fact that the above-noted legislative report (see NY Legis Doc, 1936, No. 89, pp 38-39) and existing law (see Highway Law, § 54) indicated sidewalks were often if not routinely built within the right of way of State highways.[7] We find nothing in the subject co-ordinate grant of State sidewalk construction power which indicates such was to be applied to new locations different from those where sidewalks adjacent to State highways had previously been built. Reasonably and pragmatically, it appears the Legislature intended that the State construct such sidewalks immediately next to the roadways they were to service, whether within the technical State right of way or not.
Further support for the court’s conclusion is found in the practical construction of the statute by the parties involved, to wit, the Town of Hempstead and the State. (See Neddo v State of New York, 194 Misc 379, 385-386, affd 275 App Div 492, 275 App Div 982, affd 300 NY 533; Seelye v State of New York, 178 Misc 278, 283, supra; McKinney’s Cons Laws of NY, Book 1, Statutes, § 128, subd a; § 129, subd a.) At the time of the accident the Town of Hempstead had a statutorily sanctioned ordinance of long standing authorizing it to require the construction or repair of sidewalks by or at the expense of abutting owners. (See Code of Town of Hempstead, ch 181, part 1; Town Law, § 130, subd 4; § 200-a; see, also, Highway Law, § 151.) Repair of sidewalks constructed by the State along State highways was specifically included in the ordinance (see Code of Town of Hempstead, § 181-1). After the subject incident the town proceeded thereunder to have the subject condition repaired at the expense of the appropriate abutting owner.[8]
*495 Additionally, the town official who testified herein (see p 491, supra) was in charge of having the town’s sidewalks repaired and he admitted that the town had previously had repairs made to other sidewalks in the town along Hempstead Turnpike in other parts of the town outside cities and villages (see Highway Law, § 10, subd 22). Testimony of the State’s engineer indicated that it did not maintain sidewalks along Hemp-stead Turnpike in the Town of Hempstead and there was absolutely no evidence that it ever had. (See Seelye v State of New York, supra, pp 282-283; cf. Neddo v State of New York, supra, p 386; Ryan v State of New York, 21 Misc 2d 74, 77, 78 [but, see n 10, infra].) Finally, opinions of both the State Attorney-General and the State Comptroller are also supportive of the court’s finding here. (See 1965 Opns Atty Gen 170; Opns St Comp, 1962, No. 62-936; McKinney’s Cons Laws of NY, Book 1, Statutes, § 129, subd a.)[9]
Claimant cites cases referring to a nondelegable duty of the State to maintain its highways as support for her argument that the State should not be deemed by said statute to have delegated its alleged duty of maintenance over sidewalks such as subject. (See Lopes v Rostad, 45 NY2d 617, 623; Neddo v State of New York, supra, pp 385-387.) However, these cases are inapposite because there was no duty to delegate in the first place, i.e., a State duty to maintain said sidewalks simply did not then exist. (See pp 492, 493, supra; McKinney’s Cons Laws of NY, Book 1, Statutes, § 93.) In any event, the cited cases deal with or proscribe delegation of the supposed nondelegable State duty of highway maintenance by contract. If *496 there were any delegation here (which, as noted, the court does not find), it has been by statute, not contract. Such is clearly a proper and legal means for imposing and allocating maintenance responsibilities and liabilities. (See, e.g., Rooney v City of Long Beach, 42 AD2d 34, 37-39.)
Claimant relies heavily on the case of Ryan v State of New York (supra). Arguably, Ryan is distinguishable from the case at bar. There the proof apparently did not include evidence of town maintenance of the sidewalks and seemingly the Ryan court gave substantial weight to evidence of actual State maintenance of the State highway (see Ryan v State of New York, supra, pp 77, 78).[10] Nevertheless, to the extent the Ryan decision can be deemed to hold that the said subdivision 18 of section 140 of the Highway Law is inapplicable to State constructed sidewalks within State highway right of ways, we must respectfully disagree. Apparently the court in Ryan did not have the advantage of the legislative history discussed above and was overly impressed by the State’s maintenance of the adjoining roadway (see n 10 below). Whatever the actual reason for the Ryan court’s conclusion, we do not find that court’s reasoning and determination on the subject issue convincing or correct. We believe the foregoing discussion herein properly demonstrates the soundness of our determination. The conclusion reached here effects the reasonable result intended by the Legislature (see McKinney’s Cons Laws of NY, Book 1, § 143) and avoids objectionable results and hardship to the State (see McKinney’s Cons Laws of NY, Book 1, §§ 141, 146).
Therefore, the court finds claimant has not adduced sufficient proof of any State duty of maintenance over the subject sidewalks. (See Mascaro v State of New York, 38 NY2d 870, 871.) This and her failure to adequately prove State creation of the alleged dangerous condition (see pp 489, 491, supra), or any other basis for State liability, require us to conclude the State is not chargeable with negligence in connection with Mrs. Van Etten’s fall. We reach this primarily legal conclusion despite the fact we believe there is adequate evidence to *497 sustain findings of the dangerousness of the subject condition, constructive notice from its sufficiently long existence and claimant’s freedom from contributory culpable conduct. Seemingly, claimant has been wronged, but not by the State. (Cf. Seelye v State of New York, 178 Misc 278, 283-284, supra.) Nonetheless, the said legal conclusion is determinative of this case and it is technically unnecessary for the court to make any formal further findings. (See Mascaro v State of New York, supra.)
Accordingly, we find the instant claim has not been sustained and must be dismissed. Defendant’s motion to dismiss made at the close of claimant’s case is denied, but its said motion made at the conclusion of trial is granted.

. The lower regular sidewalk was sloped or pitched toward Hempstead Turnpike while the upper sidewalk was about level. Thus the Elzey Avenue edge of the top sidewalk was higher closer to Hempstead Turnpike.

. Apparently this item was not defined in the standard State specifications then in effect and claimant did not put into evidence any provisions of the contract which may have indicated what this item comprehended.

. As noted, such duty would presumably include the abatement of the claimed dangerous condition arising from the existence of the top sidewalk.

. We note there is a remote possibility this sidewalk was wholly or partially on town or county property (see Highway Law, §§ 54,151; pp 493,494, infra), but the former possibility was seemingly expressly denied by the noted town official and there was no evidence in this record to support the latter.

. The general definition of a highway in the Highway Law only lists some aspects of the word and is clearly not an all-inclusive or exhaustive delimitation of the term. (See Highway Law, § 2, subd 4.) This can be seen by the fact that while said definition does not include sidewalks, it also does not include roadways or pavement, obvious essentials of any highway. (See Highway Law, § 2, subd 4.)

. We note this recommendation was not included in the Highway Law recodification passed in 1936, but rather was added as an amendment thereto the following year. However, we discern no significance in this fact to the issue under discussion, the amendment being unquestionably based on the said recommendation and underlying report. (See NY Legis Doc, 1937, No. 67, pp 11, 28-29.)

. We observe the conception of State highway right of ways was at this time not completely clear cut since the county and not the State acquired the land therefor, as well as any additional land needed for sidewalks. (See NY Legis Doc, 1936, No. 89, p 36; Highway Law, § 54.)

. At the time of trial the repairs had not yet been made, but the important fact *495 here is the conduct of the town in acting to have the sidewalk repaired. On the instant record we find the fact the repairs had not yet been actually effected to be without significance.

. The court is of course aware the ultimate conclusion reached in the cited State Comptroller’s opinion is contrary to the determination here, but the result there was seemingly dictated by the Ryan case cited above. As discussed hereinafter (see p 496, infra), we find the contrary conclusion in Ryan to have been improperly arrived at and incorrect. We have cited the State Comptroller’s opinion because it indicates that State executive had previously (i.e., before Ryan) believed the subject sidewalks were a town responsibility. Obviously he had no choice but to change that belief once the Ryan decision was rendered. (See e.g., McKinney’s Cons Laws of NY, Book 1, Statutes, § 72, subd a.) This court is not so bound. (See, generally, McKinney’s Cons Laws of NY, Book 1, Statutes, § 72, subd b.) We note the cited Attorney-General’s opinion apparently did not consider the Ryan decision, or chose to ignore it because the opinion was seemingly not specifically concerned with the limited question of sidewalks within State right of ways. Whatever the reason, we believe it at least generally supports the conclusion reached herein.

. We note the only evidence of State maintenance referred to in Ryan was of the roadway, not the sidewalks (see Ryan v State of New York, supra, p 77). However, since a duty of roadway maintenance has been held not to necessarily entail a concomitant duty of adjacent sidewalk maintenance (see Sulpizi v City of New Rochelle, 42 AD2d 723, 723-724), it does not appear the Ryan’s court reliance on State roadway maintenance was proper.