*179 OPINION OF THE COURT
Donald J. Corbett, Jr., J.
The trial of this claim is bifurcated, and this opinion addresses only liability. Claimant Elvira Nado (hereinafter claimant, as the claim of Fred Nado is derivative) was injured on September 25, 1987, in the Town of Tuxedo (Town) in a fall from the curb in front of the post office on State Route 17. She was 68 years of age at that time.
This seemingly simple matter resolves several issues previously unresolved in reported cases. There was a hole in the curb estimated by claimant to some 20 inches long and some eight inches deep. The testimony reveals that claimant edged as close as possible to the roadway in order to converse with her husband who was standing on the other side of this four-lane highway. She then fell to the ground when her foot landed in the opening. The defendant attempted to show that it was just as plausible for claimant to have misstepped off the edge of the curb onto the roadway pavement, since claimant testified that she did not see the hole as she had not looked downward while approaching the edge of the curb. It is likely that in moving closer and closer to moderately heavy traffic which includes trucks, one would at least glance downward using peripheral vision, or even subconscious observation, to estimate one’s proximity to the end of the sidewalk, the curb, or the roadway.
First, I was persuaded by claimant’s testimony that she stepped into the hole in question and not off the curb. Second, I find that although claimant purportedly did not see the hole, it was of such dimension that, in the exercise of due care and proper use of her senses, she should have seen it. I find that her culpable conduct was 50% at fault for the accident, and any damages hereinafter awarded shall be proportionately diminished.
Liability against the State is dependent upon a determination whether the curb is part of the roadway or part of the sidewalk, for by statute the general duty of maintaining highways in towns falls to the State of New York (Highway Law § 12), while maintenance of adjacent sidewalks devolves to the Town of Tuxedo (Highway Law § 140 [18]).
Liability is also contingent upon a finding that the entity responsible for maintenance is on actual or constructive notice of the defect. Here, claimant’s expert testified convincingly that the height of the vegetation growing from the hole and *180 the absence of nearby sources of seed, etc., suggested that the hole had existed for at least one month and, more likely, for six months. I find that the defect existed for a period sufficient for the State or the Town to have been on constructive notice of the defect, particularly given the State’s acknowledged inspections of Route 17 in the Town two or three times per week.
Curbs have been defined — "A vertical or sloping member along the edge of a roadway clearly defining the pavement edge” (Vehicle and Traffic Law § 111), as have sidewalks— "That portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for the use of pedestrians” (Vehicle and Traffic Law § 144). The functions of curbs have been articulated — to control drainage; to act as deterrents to vehicles leaving the pavement at hazardous points; to delineate the edge of pavement, to present a more finished appearance, and to assist in the orderly development of the roadside (American Association of State Highway Officials — A Policy on the Geometric Design of Rural Highways [1965]). Claimant’s expert engineer described the curb in question as a barrier curb, functioning primarily as a barrier to deflect motor vehicles from leaving the roadway. She testified that it was not a part of the concrete placement for the sidewalk, as a full construction joint apparently filled with bituminous joint filler separates the curb from the sidewalk. She averred that the construction joint indicates that the two portions were cast as separate elements.
Highway Law § 140 (18) requires the Town Superintendent to "Maintain all sidewalks in the town constructed by the state adjacent to state highways”. Indeed, it is essentially without dispute that if the curb is part of the roadway, the State has the duty to maintain it, and if the break or hole in the curb was a proximate cause of claimant’s fall, the State could be held liable given actual or constructive notice of the defect. If it is part of the sidewalk, the same exposure would focus on the Town of Tuxedo. But is it roadway or is it sidewalk? Judicial guidance is unavailing, as, for the most part, the courts have not faced the question directly.
The Court of Appeals in Mascaro v State of New York (38 NY2d 870) found insufficient proof to posit a finding as to whether the State had a duty to maintain the curb, a finding the Appellate Division had also declined to make (46 AD2d 941, 942) and thus left the question unresolved.
*181 In Skelly v Village of Port Chester (6 AD2d 717) the plaintiff was unable to show prior written notice of a defect and sought relief on the theory that the defective curb was not part of either the sidewalk or the street, and therefore prior notice was not required. The Second Department, in affirming, noted that it would be unrealistic to find that a curb, which is the dividing line between the part of the street or highway intended for vehicular traffic, and the sidewalk, the part intended for pedestrian use, was not part of the highway or the sidewalk. The Court found that notice was required regardless of the curb’s designation.
In Schorr v State of New York (54 Misc 2d 444) the court considered an alleged defective curb but dismissed the claim solely because of the claimant’s then-disqualifying contributory negligence. That claim preceded CPLR article 14-A, and contributory negligence precluded any recovery for the claimant. The court found that the State’s gratuitous act in repairing the curb shortly after that accident, as it did in the claim at bar four days after the accident, is voluntary and does not, in and of itself, constitute an assumption of a nondelegable duty.
In Williams v State of New York (June 18, 1981, Silverman, J., claim No. 59839) the distinction between the curb and the sidewalk, if any, was not dispositive of the issue, as the court primarily addressed the State’s responsibility for maintenance of the sidewalk pursuant to Highway Law § 140 (18) although it was noted that claimant had failed to adduce sufficient proof of a duty on the part of the State to maintain the curb in issue.
In Grace v State of New York (47 Misc 2d 253) the court was asked, inter alia, to identify the agency responsible for the maintenance of the curbing and clearing of debris in the gutter adjacent to a State highway. This claim also preceded CPLR article 14-A and, as the court found contributory negligence, no liability attached. The evidence at trial in Grace (supra) showed that the road in question, State Route 106, had been widened, and thus the provisions of Highway Law § 12 (5) became applicable.
Section 12 (5) reads in relevant part: "Whenever a state highway has been constructed at a greater width than that provided in the original plans * * * the additional width of pavement shall be deemed to be a part of the highway and shall be maintained by the commissioner of transportation as *182 provided herein, but in no case where any such highway has been widened as provided above, shall the state be responsible for the maintenance of any curb or of any paved gutter or paved shoulder, provided, however, that on any highway maintained by the state the commissioner shall have authority to clean any pavement or paved gutter or repair any unpaved shoulder or unpaved gutter outside of the pavement maintained by the state, where necessary for the protection of such pavement.”
Interestingly, no such similar evidence has been presented with respect to Route 17 in the Town of Tuxedo. State exhibit A, consisting of three pages of Record Plans for the reconstruction of Route 17 between 1977 and 1979, does not address the widening of the roadway. It is thus possible to discern a legislative plan and intent where the statutes do not directly address the issue. Highway Law § 140 (18), which legislated responsibility for maintenance of sidewalks in towns constructed by the State adjacent to State highways, was added by Laws of 1937 (ch 833, § 3). The language in Highway Law § 12 (5), where the State specified that it would not be responsible for maintaining the curb if State roadways were widened under certain circumstances, is found at least as early as Laws of 1936 (ch 63).
Section 12 (5) would be without any meaning unless it is intended to distinguish the State’s responsibility for maintenance of curbs in instances where the road had not been widened as specified. If there was a legislative intent to alleviate the State from the responsibility to maintain curbs in all circumstances, section 12 (5) would not be so limited. Indeed, it was the following year, in 1937, that the Legislature acted again in a specific fashion by adding subdivision (18) to Highway Law § 140, making the towns responsible for maintaining sidewalks adjacent to State highways. The Legislatures in 1936 and 1937 cannot thus be presumed not to have understood the distinction between sidewalks and curbs.
These legislative enactments lend support to a finding that the curb is part of the roadway. I find that the Legislature in enacting the language of section 12 (5) and section 140 (18) within one year of each other in 1936 and 1937, respectively, intentionally distinguished curbs from sidewalks. The expert testimony offered by claimant described the various functions of curbs and buttresses the conclusion that the essential utility of curbs is as part of the roadway. Indeed, the Highway Superintendent for the Town of Tuxedo for 10 years preceding *183 this incident testified that he thought the State was responsible for the maintenance of both the sidewalk and the curb, and that he had called the Department of Transportation to make such repairs prior to this accident. He did opine, albeit as a layman and not based upon engineering principles, that the curb was part of the sidewalk. The State in fact repaired the hole in the curb just four days after the accident, after having been notified.
The defendant’s expert testified that the curb was part of the sidewalk, and as such the responsibility for maintenance fell to the Town of Tuxedo. He did concede however that one of the functions of the curb is channelization of drainage, which is maintained by the State. He also acknowledged that the State would repair a curb where it was causing a problem with the drainage or, as in the instant case, where the State believed that the defect in the curb could have caused a problem for the State’s snowplows during a snowstorm. It thus appears that the State would at least on occasion unilaterally make repairs to the curbs. While this does not necessarily constitute the assumption of a duty, it does cloud the question of ultimate responsibility between these entities, most notable here in that the State asserts that the Town was responsible for the sidewalk and curb, and the Town believed, apparently for at least 10 years, that this was the State’s obligation.
The defendant implies that the maintenance responsibilities for the curb could be examined based on the function served, that is, the vertical face of the curb could be maintained by the State as part of the roadway, and the horizontal surface of the curb being maintained by the Town as it serves essentially as an extension of the sidewalk and is intended for pedestrian use. Such an analysis must fail, as it does not address any legislative intent to divide the legal duties for maintaining the curb, and would leave the State and the Town to debate the functions and the duties to maintain. Indeed, this would be a very unsatisfactory result, leaving potential litigants in a quandary as to which entity to sue in the event of an accident. The condition of the curb in the claim before me would raise an interesting dilemma, as it was broken on both the horizontal and vertical surfaces. Other accidents occasioned by pedestrian or vehicular functions would lead to different defendants, and force suits against both entities in different courts. Accordingly, judicial economy and clarity call for a clear decision untangling the confusion.
Based on the foregoing, I find that a curb, irrespective of *184 any particular function being examined, is part of the roadway and not part of the sidewalk for maintenance purposes, except when such curb falls within the parameters of Highway Law § 12 (5).
This is not in conflict with the well-reasoned opinion in Van Etten v State of New York (103 Misc 2d 487, affd 83 AD2d 963, lv denied 55 NY2d 602), where the court was examining the applicability of Highway Law § 140 (18) as it pertained to sidewalks and the State’s right-of-way. It was neither considering whether curbs were part of the roadway or the sidewalk, nor was it examining the legal duty to maintain them. As the State has no common-law duty to build and maintain public highways (Van Etten v State of New York, supra, at 492), the duty was created by specific legislative enactment, and the State’s existing general duty to maintain its highways in towns was not amended in 1937 (supra, at 493). Therefore the Legislature specifically carved out an exception and limitation on its duty to maintain curbs, to wit, only in enumerated circumstances when a State highway was widened (see, Highway Law § 12 [5]). If the defendant wishes to dispense with this responsibility, the resolution will require legislative action, and cannot be accomplished through judicial fiat.
Accordingly, absent proof that the highway here had been widened at all after its original construction, pursuant to Highway Law § 12 (5), I find that the defendant State of New York was under a duty to maintain the roadway and consequently the curb in question; that it had constructive notice of the defect in said curb, and that the defect in the curb in the front of the post office should have been repaired by the State. I find that the defect in the curb was a proximate cause of the injuries sustained by claimant Elvira Nado. I also find that claimant Elvira Nado was equally culpable for the injuries sustained. The defendant’s motion to dismiss, made at trial, is denied. All other motions not otherwise ruled upon are also denied. The Clerk of the court is directed to enter an interlocutory judgment consistent herewith and to schedule a trial on the issue of damages.